[Civ. No. 10553. Third Dist. July 9, 1963.]

STUART M. DINGWALL, Plaintiff and Appellant, v.
VANGAS, INC., Defendant and Respondent.

Sankary, Sankary & Horn, David Horn and Morris Sankary for Plaintiff and Appellant.

Thomas, Snell, Jamison, Russell, Williamson & Asperger, William N. Snell and James E. La Follette for Defendant and Respondent.

PIERCE, P. J.—A default and default judgment were taken against defendant. Within the six-month period it pe-

titioned for and was granted relief by the trial court under Code of Civil Procedure section 473 upon the grounds default had been taken through its "mistake, inadvertence, surprise or excusable neglect." A copy of the proposed answer and cross-complaint was filed with the application. We hold the trial court properly granted relief under the following facts disclosed by the affidavits:

The litigation involves a dispute over a contract of sale of real property. A complaint in ejectment and to quiet title was filed by plaintiff-seller August 2, 1961. Plaintiff was then represented by Messrs. Robinson and Robinson, attorneys, of Auburn, California. Although a complaint was filed, the parties had been negotiating and continued to negotiate a settlement of their controversy, defendant being represented by a Fresno attorney, Charles E. Small. In a letter written by Robinson to Small, an "open" stipulation to appear was granted, subject to a 10-day written notice. It was indicated in the letter the complaint had been filed to prevent a bar of the action by laches. A copy of the complaint and summons, although not mentioned in the letter, was enclosed with it. Since, at the time it was forwarded, service of summons had not been effected, the copy thereof was not complete. It did not contain the notice required by Code of Civil Procedure section 410 that the person served was being served on behalf of the defendant corporation, absent which "no default may be taken against such corporation. . . ." (Code Civ. Proc., § 410.)

On August 3, 1961, Small received a phone call from E. H. Schneider, an officer of the corporation, that he had been served and Small then noted upon the face of the copy of the summons which Robinson had forwarded to him: "Served on E. H. Snyder [*sic*] at Fresno Office by Deputy Sheriff on 8-3-61 10:36 A.M." The actual copy which had been served upon Schneider was not delivered to Small. The parties, through their attorneys, continued negotiations for a settlement.

Late in September Robinson orally notified Small that he was withdrawing as plaintiff's attorney and would be replaced by Morris Sankary of San Diego. Thereafter a meeting at Tahoe where the property in litigation is located was held. Small, Sankary, plaintiff and a representative of defendant were present. An effort to settle the case was unsuccessful. Small thereupon turned the case over to LaFollette, a member of his firm, to handle.

No formal notice of substitution of attorneys was then served upon defendant's attorneys, nor was one ever filed. Sankary, however, on October 6, 1961, without giving such notice, filed a substitution with the County Clerk of Placer County.

On October 3, 1961, he wrote a letter to defendant's attorneys advising them to file an answer within 10 days. LaFollette, examining the case file in his office, noted the copy of the complaint and summons appearing therein and assumed they were the copies which had been served upon Schneider. This assumption was strengthened when he observed the endorsement appearing on the face of the summons: "Served on E. H. Snyder," etc. He noted the summons did not contain the notice required to give the service validity as against the defendant corporation.

LaFollette, having concluded that service of process had been invalid, on October 13, 1961, notified the Placer County Clerk by letter that service was defective and that no default could be taken. He sent a copy of this letter to Sankary.

Sankary did not reply. Instead on October 18, 1961, he filed the original summons with proof of service and also filed a request for default which was entered by the clerk. On October 23, 1961, the court heard the matter ex parte and entered judgment. This judgment decreed that plaintiff recover judgment against defendant and that a writ of possession issue. It quieted plaintiff's title to the real property in fee simple. Neither LaFollette nor any member of his firm nor defendant had notice or knowledge of any of these proceedings.

Sankary did not cause a writ of possession to issue; and did nothing, the effect of which would have been to notify defendant or its attorneys of the action taken. Instead he proceeded to sit the matter out, apparently waiting for six months to expire.

LaFollette did nothing either. His affidavit avers that after he had notified Sankary that service of summons had been defective he had "proceeded on the basis that as soon as service was perfected, affiant would either file the necessary responsive pleadings or request further time depending on the progress of affiant's preparations; that upon hearing nothing further from plaintiff or his attorneys, affiant concluded that the plaintiff's attorneys had determined not to immediately press the matter by correcting the service either because plain-

tiff was then residing in San Diego (plaintiff apparently resides at Tahoe City only in the summertime) or because plaintiff's attorneys had become busy with other matters.'' He also avers that relying on the belief that plaintiff was taking no action, affiant gave preference to several emergencies with respect to other clients.

On February 12, 1962, an answer and cross-complaint were prepared, served on both Sankary and Robinson (the latter being believed still to be attorney of record for plaintiff) and sent to the County Clerk for filing. Again, there was no response from Sankary. However, when the cross-complaint was not answered, LaFollette inquired of the clerk and then first learned of the default and default judgment. This was followed by investigations at the Fresno County Sheriff's office and finally at the office of the corporation where the copy of the summons which had *actually* been served upon Schneider was located. It was then found that notice as required by Code of Civil Procedure section 410 had actually been included and that service had been valid.

We have stated the facts in some detail. They, without argument, seem sufficient to establish that the trial court did not abuse its discretion in granting defendant relief from default.

It is stated in *Reed* v. *Williamson,* 185 Cal.App.2d 244 [8 Cal.Rptr. 39], at pages 248, 249:

''Code of Civil Procedure, section 473, . . . is remedial in its nature and is to be liberally construed. [Citation] The policy of the law is to have every litigated cause tried on its merits; and it looks with disfavor on a party who, regardless of the merits of his cause, attempts to take advantage of the mistake, surprise, inadvertence, or neglect of his adversary. [Citation] Reviewing courts have always looked with favor on orders excusing defaults and permitting controversies to be heard on their merits. Such orders are rarely reversed, and never unless it clearly appears to have been a plain abuse of discretion. [Citation]

''Even in a case where the showing under section 473 . . . is not strong, or where there is any doubt as to the setting aside of a default, such doubt should be resolved in favor of the application. [Citation] All presumptions will be indulged in favor of the correctness of the order, and the burden is on the appellant to show that the court's discretion was abused. [Citation]

 "In *Baratti* v. *Baratti*, 109 Cal.App.2d 917 [242 P.2d 22], we said (p. 921):

" 'Inadvertence is defined as lack of heedfulness or attentiveness, inattention, fault from negligence. (Webster's New Inter. Dict., 2d ed.; [citation].) . . . The "excusable neglect" referred to in the section . . . is that neglect which might have been the act of a reasonably prudent person under the same circumstances. [Citation]' "

 Where the mistake is not that of the defendant but of his attorney, it appears that greater tolerance in granting relief has been extended. It is stated in *Stub* v. *Harrison*, 35 Cal.App.2d 685 [96 P.2d 979], at pages 689, 690:

". . . The courts . . . are somewhat loath to penalize a litigant on account of some omission on the part of his attorney, particularly where the litigant has acted promptly and has relied . . . upon the attorney to protect his rights."

 In *Stub* relief was granted where the attorney's negligence consisted entirely of forgetfulness coinciding with mental distress occasioned by the illness of a son and a pressure of other business.

It will be observed that the mistake in the case at bench was principally due to a regrettable but understandable failure of liaison between an attorney fully familiar with the case in turning it over to another attorney. A smiliar case (although it involved another type of default) was before this court in *Soda* v. *Marriott*, 130 Cal.App. 589 [20 P.2d 758]. There the lawyer handling the case was appointed to the bench and the mistake was due to the succeeding attorney's unfamiliarity with the file. It was held it was not an abuse of discretion by the trial court to grant relief.

In another appeal before this court in *Carbondale Machine Co.* v. *Eyraud*, 94 Cal.App. 356 [271 P. 349], the default occurred when the member of the law firm to whom the case had been referred by the client became deluged with work due to his partner's departure from the office on an extended business and pleasure trip. This was held to be a case of excusable neglect. This court observed (on page 360):

"If the appellant had exercised as much industry in trying to bring about a trial of this case on the merits as it has in trying to prevent a trial on the merits, the action would no doubt have long since been finally determined."

In our opinion, the mistake or neglect of attorney LaFollette was excusable. It was that type which reasonably prudent lawyers do make. In addition to reliance upon the mis-

taken belief that the summons' copy in the file was that which had been served, there were other tranquilizing circumstances to dull his astuteness. Although not adverted to by affidavit, we think we may notice a courtesy-custom among attorneys (perhaps more prevalent in the less metropolitan communities) not to take defaults against fellow attorneys without specific warning. (And see rule 25, Canons of Professional Ethics of the American Bar Association.) Secondly, there had been here long settlement negotiations in a lawsuit where the complaint had only been filed as a laches-stopper. Thirdly, there was Sankary's silence after LaFollette had notified him his service of summons was defective and the reason therefor. It seems to us to have been not unreasonable for LaFollette to construe such silence as an assent to this claim. Fourthly, the fact that LaFollette believed Sankary not yet to be the attorney of record in the case could have been an added soporific factor.[1] Lastly, plaintiff's attorneys were themselves actors in the series of events producing the mistake. Robinson inadvertently furnished the incompleted summons (without reference to it in his forwarding letter), thus supplying the instrument which brought about the mistake. Sankary failed to give notice of his substitution as an attorney. This, perhaps, was not inadvertent.

■ Appellant misplaces reliance upon *Riskin* v. *Towers*, 24 Cal.2d 274 [148 P.2d 611, 153 A.L.R. 442]. He cites it as authority for a rule that a default cannot be set aside if defendant's attorney, ignorant of the law that special appearance by motion to quash may be made to test the validity of service of summons, fails to make such motion before default is entered. The Riskin case does not stand for that proposition at all. Its holding is that where a defendant does move to quash, alleging invalid service of summons, and this motion is denied, it is an abuse of discretion for the trial court to deny his section 473 motion seasonably made thereafter if the special proceedings were the sole reason for the default.

The mistake of defendant's attorney here was not one of

---

[1]Although we do not rest our decision even in part upon this, we note that the failure of Sankary to give notice of his substitution as attorney makes the validity of the default taken and subsequent steps at least debatable. It has been held that notice is a necessary condition to the completion of the change of attorneys and that until there has been a formal substitution, opposing counsel must deal with the original attorney. (Code Civ. Proc., § 285; *Epley* v. *Califro*, 49 Cal.2d 849, 854 [323 P.2d 91]; *Sherman* v. *Panno*, 129 Cal.App.2d 375, 378 [277 P.2d 80]. Whether a waiver of the notice requirement occurred here is not clear.

law; it was a mistake of fact. He mistakenly believed that the copy of the summons in his file was the copy which had been served. Had the assumed fact been true, the service would have been invalid. (*Sternbeck* v. *Buck*, 148 Cal.App. 2d 829 [307 P.2d 970].) Proceedings to quash would have been permissible; not required. They do not create invalidity; they adjudicate it. A failure to obtain an adjudication of invalidity does not breathe life into a void judgment.

■ Appellant also contends that no defense on the merits has been shown. We disagree. The basis of the complaint is that the description in the deposit-receipt contract of sale made it void for uncertainty. It is unnecessary to rule herein on the question of the sufficiency of the description. The cross-complaint of defendant is for a reformation. It alleges that appellant had had the property surveyed and its true boundaries marked with stakes; that defendant, with appellant's knowledge, had taken possession and had made improvements having a reasonable value of $60,406.48. An affidavit of merits was included with the application to the trial court for relief. The contention of appellant is without merit.

The order of the trial court is affirmed.

Schottky, J., and Friedman, J., concurred.

A petition for a rehearing was denied July 31, 1963, and appellant's petition for a hearing by the Supreme Court was denied September 4, 1963.