[Civ. No. 31773. Second Dist., Div. One. Mar. 29, 1968.]

GLENNA M. HIGLEY, Plaintiff and Respondent, v. BANK OF DOWNEY, Defendant and Appellant.

Rogers & Carnes, Mark E. Joseff and James E. Plooster for Defendant and Appellant.

McCray & McCray and W. Patrick McCray for Plaintiff and Respondent.

FOURT, J.—This is an appeal by defendant Bank of Downey (hereinafter sometimes referred to as the Bank) from a judgment in equity setting aside a default and default judgment taken by the Bank against respondent in a prior case.

Respondent Glenna M. Higley, aged 48, was married for the second time in 1960 to Lorenzo S. Higley, Jr. The couple separated in July 1964, and respondent instituted an action for divorce. In October 1964, they were briefly reconciled, but they separated finally in April 1965, and Glenna then obtained a divorce.

Meanwhile, on February 15, 1965, the Bank filed an action against Glenna Higley and other defendants in which three causes of action were set forth. The first was an action on a promissory note for $12,000 executed in favor of the Bank on September 23, 1964, by defendants G. E. Newton and R. Thomas Appleton. The second was an action on the written guarantee of said note by H. Canady and L. S. Higley, Jr., Glenna's estranged husband. The final cause of action, and the only one in which Glenna was joined, was based upon a continuing guarantee of said note purportedly executed by Glenna and other named defendants on September 23, 1964.

When the Higleys married, Glenna possessed substantial liquid assets and she supported herself throughout the marriage. Her husband was or became involved in a number of unsuccessful business ventures which culminated, after the couple's final separation, in his petition in bankruptcy. The only substantial asset then remaining to Glenna was the family residence which was originally purchased with her separate funds.

On the night of March 5, 1965, during the reconciliation period, Glenna was at home with her then husband, Lorenzo

Higley. The doorbell rang and her husband answered, then called her to the door. The man standing in the open doorway inquired if she was Glenna Higley, advised her that he had some papers for her, and served her with a copy of the summons and complaint in the Bank's action. Thereupon, the man left without further explanation or conversation. Glenna's husband immediately took from her the papers which she had no opportunity to read or to examine and told her that she need not be concerned with the matter which would be properly taken care of by his attorney.

Glenna Higley at no time had business dealings with or knowledge of the Bank of Downey before she learned, in September of 1965, that the Bank had placed a lien on her home. She received from the Bank no further notice, demand, or other communication after service of the documents which she did not read. To her actual knowledge, no writ of attachment or notice thereof was ever given to her. She relied on her husband's statements and took no further action in the matter until the attorney she consulted regarding other problems affecting title to the house learned that the Bank had a recorded lien and discovered the default judgment upon which it was based. At her attorney's request, respondent then obtained a copy of the complaint from her husband's attorney. When she thereafter reviewed this document with her attorney she for the first time became aware that the judgment was based upon a continuing guarantee purportedly bearing her signature, which was not genuine. In fact, on September 23, 1964, the date upon which the continuing guarantee was purportedly executed, Glenna was separated and living apart from her husband, against whom she had instituted divorce proceedings.

The Bank, having served respondent in March of 1965, had her default entered on April 16, 1965, and on June 15, 1965, caused an abstract of judgment taken against her to be recorded in the county in which her residence was located.

When Glenna Higley learned of the default judgment the latter part of September 1965, it was within the six-month period allowed for a motion to set aside the judgment (Code Civ. Proc., § 473) and she authorized her attorney to so proceed. Respondent's attorney, however, had mistakenly copied from the county records the information that respondent's default was taken May 13 rather than April 16, 1965. He prepared a motion to set aside the default and on October 22, 1965, forwarded it to the court, which refused to

file the motion and on October 26, 1965, returned the documents with the notation that the six-month period· expired October 16, 1965. Respondent's attorney so advised his client and promptly prepared a complaint invoking the equity jurisdiction of the court to vacate the default and default judgment.

The trial court concluded that Glenna Higley had a ·meritorious defense to the underlying cause of action since she was living apart from her husband at the time the continuing guaranty was purportedly signed by her, and she neither signed nor authorized any other person to sign the guarantee on her behalf. The court found, further, that respondent's failure to appear in the original action was due to her excusable mistake, inadvertence and·neglect, and her failure to have the default set aside within six 'months was due to the excusable mistake, inadvertence and neglect of her counsel. Upon discovery of the error, respondent and her counsel with due diligence filed the complaint in equity, and the Bank was not prejudiced by the delay in having the judgment set aside. On this basis the court undertook its equitable jurisdiction to enter judgment vacating and setting aside the default and judgment in the Bank's action on the continuing guarantee solely insofar as respondent Glenna Higley was concerned.

 Appellant contends that the court exceeded its jurisdiction in granting equitable relief from a final·judgment on grounds other than extrinsic fraud, extrinsic mistake, or reasons of public policy. This contention is without merit.

 A court of equity is clearly vested with ·authority to set aside a default judgment upon an affirmative showing that the defaulted defendant was prevented by fraud, accident or mistake from presenting a meritorious defense at a fair adversary trial in the original proceedings. (29 Cal.Jur.2d, § 159, p. 107.) " ' " [E]xtrinsic accident and mistake of fact" may, in some situations, be a proper basis for the exercise· of the court's equitable jurisdiction to vacate a default judgment'; . . . 'whether such a condition exists is a question of fact depending entirely upon the particular circumstances in each case.' The ground for the exercise of this jurisdiction, of course, is that there has been no fair adversary trial at law.'' (*Turner* v. *Allen*, 189 Cal.App.2d 753, 757 [11 Cal.Rptr. 630] ; see also *Hallett* v. *Slaughter*, 22 Cal.2d 552, 557 [140 P.2d 3] .)

 In the instant case respondent's excusable error ·was

induced by the misrepresentations of her husband. She was served with papers in the evening at her home, and at the same time her husband was served. The process server had no conversation with respondent and respondent had no opportunity to read the papers as her husband took them from her, advised her that it was not her concern but a business transaction of his which he would have his attorney handle. ▆▆ "Where a default is entered because defendant has relied upon a codefendant or other interested party to defend, the question is whether the defendant was reasonably justified under the circumstances in his reliance or whether his neglect to attend to the matter was inexcusable. [Citations.]" (*Weitz* v. *Yankosky,* 63 Cal.2d 849, 855 [48 Cal.Rptr. 620, 409 P.2d 700].) ▆▆ It is clear that respondent's reliance on her husband's statement was justified, that she had no reason to believe she was being intentionally misled, and that her failure to take action on the matter thereafter was excusable.

Although the mistake by respondent's counsel compounded the error in this case, we are satisfied that this mild inadvertence, which contributed virtually nothing to prejudice the Bank, should not inhibit the court's equitable action in setting aside the default. " 'There are many cases holding that the party may have relief in equity from the consequences of his mistake of fact, although he was somewhat negligent in making the mistake, if his negligence in no way prejudiced the opposing party. [Citations.] . . . At most, it was a question of fact for the court below to determine whether or not the lack of vigilance on the part of the plaintiff was such as would not have occurred with a man of ordinary care and prudence, under the same circumstances. That court has decided the question in favor of the plaintiff, and we are satisfied with its conclusion.' " (*Hallett* v. *Slaughter, supra,* 22 Cal.2d 552, 556-557.)

▆▆ Ultimately, the issue whether sufficient grounds were presented to justify the court in setting aside the default is a matter subject to the sound discretion of the trial court. " 'Whether or not the circumstances of a particular case are such that the mistake or inadvertence should be excused is a question the determination of which must, of necessity, be left largely to the court to which application is made, and it is well settled that this court will not interfere with the exercise of the discretion of that tribunal, except in a case where a clear abuse of discretion is apparent. Particularly is this so where the discretion is exercised in favor of the granting of

the relief sought, as such action tends to bring about a conclusion on the merits, which is always to be desired.' '' (*Crane* v. *Kampe,* 225 Cal.App.2d 200, 204 [37 Cal.Rptr. 220]; *Vinson* v. *Los Angeles Pac. R.R. Co.,* 147 Cal. 479, 483 [82 P. 53].)

We find no abuse of discretion or misapplication of the law in the instant case. Abundant grounds appear to justify the action of the trial court in setting aside the default and judgment. Respondent presented the defense that her signature on the document upon which she is charged with the payment of a substantial sum of money is a forgery. She reasonably relied upon the statements of her husband that the matter would be taken care of promptly, unaware that his interests might be in conflict with her own and uninformed of the extent to which she was involved. She should not be penalized by the delay due to the unfortunate error of the attorney who first brought the import of this matter to her attention, where the appellant has asserted no basis upon which prejudice to its interests may be found and therefore cannot claim the defense of laches. The matter was prosecuted with utmost diligence considering the circumstances. (*Corey* v. *Weerts,* 214 Cal.App.2d 416 [29 Cal.Rptr. 533].)

Finally, although the word ''extrinsic'' is not used by the court in its findings to describe the nature of the mistake, the record clearly reveals the existence of ''extrinsic mistake.'' That the court based its decision upon evidence of extrinsic mistake is necessarily implied. (*Turner* v. *Allen,* 189 Cal.App. 2d 753, 760 [11 Cal.Rptr. 630].)

Utilizing the authority vested in this court by Code of Civil Procedure, section 956a we order the conclusions of law amended to add to articles II and III thereof before the phrase ''excusable mistake, inadvertence and neglect'' the word ''extrinsic.''

As so modified the judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 22, 1968.