[L.A. No. 31481. Dec. 10, 1982.]

JAMES DOUGLAS CARROLL, a Minor, etc.,
Plaintiff and Respondent, v.
ABBOTT LABORATORIES, INC., Defendant and Appellant.

*Reprinted due to erratum. See 33 Cal.3d 301.

894

---

**COUNSEL**

Overton, Lyman & Prince, Laurence H. Schnabel and Jon P. Kardassakis for Defendant and Appellant.

Lee W. Landrum for Plaintiff and Respondent.

**OPINION**

**KAUS, J.—**

I

Appeal from orders made pursuant to section 473 of the Code of Civil Procedure,[1] vacating and setting aside a judgment of dismissal. (Code Civ. Proc., § 904.1, subd. (b).)

■  This is the problem: Section 473 of the Code of Civil Procedure permits relief for "excusable" neglect. The word "excusable" means just that: inexcusable neglect prevents relief. (*Luz* v. *Lopes* (1960) 55 Cal.2d 54, 65 [10 Cal.Rptr. 161, 358 P.2d 289]; *Benjamin* v. *Dalmo Mfg. Co.* (1948) 31 Cal.2d 523, 528-533 [190 P.2d 593].) Further, as a general rule an attorney's inexcusable neglect is chargeable to the client. (*Benjamin* v. *Dalmo Mfg. Co.*, *supra*, at p. 532.) Yet, starting with *Daley* v. *County of Butte* (1964) 227 Cal.App.2d 380, 388-395 [38 Cal.Rptr. 693], there has developed a line of cases which has prompted one noted commentator to protest that "the more gross and inexcusable the neglect of the attorney, the more certain is the party of getting relief." (5 Witkin, Cal. Procedure (2d ed. 1971) Attack on Judgment in Trial Court, § 147, p. 3721.) This opinion attempts to solve the apparent paradox.

II

Involved in the proceedings we are about to discuss are Monica Denise Carroll, the mother and guardian ad litem of the minor plaintiff James Douglas Carroll, plaintiff's legal representative (counsel) and defendant Abbott Laboratories, Inc. (Abbott).

On December 11, 1975, counsel, on behalf of James, filed a complaint against Abbott. It alleged that James, a minor, suffered brain damage when Monica, while pregnant with James, ingested Nembutal, a drug manufactured by Abbott.

In preparation for trial, Abbott served on counsel a notice requesting production of three sets of documents: (1) medical records concerning James' treatment at the Seventh Day Adventist Hospital in Saigon, Vietnam; (2) medical records concerning James' treatment at a military hospital in Vietnam; and (3) a "baby book" kept by Monica that detailed James' first eight years. The

---

[1]Section 473 provides in pertinent part: "The court may, upon such terms as may be just, relieve a party or his legal representative from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect . . . ."

basis for the request was Monica's deposition testimony indicating that these documents were in her possession. Following service of the notice on February 26, 1979, counsel requested and was granted four extensions of time, but by November 7 the documents had still not been produced. Abbott then filed a motion to compel production. That motion was granted—counsel had not appeared at the hearing—and notice of the court's ruling was served on him. When counsel failed to comply with the court order, Abbott went to court a second time, seeking a dismissal of the case for failure to comply with the court order or, alternatively, a second order compelling production.[2] On January 11, 1980, the court granted a second motion to compel production and continued the motion to dismiss. Production was still not made, however, and on January 24, at a hearing at which there was again no appearance for plaintiff, the court dismissed James' action as to Abbott.

On January 29, counsel filed a motion for relief from the dismissal under Code of Civil Procedure section 473. In his declaration, he asserted that none of the requested documents were in his or Monica's possession. He also admitted that he had not been in touch with his client since July 23, 1979. Counsel did appear at a February 14 hearing and urged his own motion. The trial court granted the motion to vacate the dismissal on condition that counsel and Monica file declarations stating that they did not know the whereabouts of the requested documents. When they failed to fulfill that condition, the motion to vacate the dismissal was taken off calendar.

Counsel filed a second motion for relief under section 473 on April 3, 1980. In his newest declaration, he asserted that on February 15 he had been informed by Monica that she did, after all, possess the requested documents. In fact, Monica told counsel that at one point between July and August 1979, she had actually turned the documents over to him. Counsel asserted, however, that some time thereafter his office returned the documents to Monica, though he himself had "no recollection of this rather disturbing event." Counsel's declaration in support of the motion also contains certain allegations which, if believed, might have supported a finding that the January 24 dismissal had been the result of a mistake induced by certain representations of Abbott's attorney. The allegations were denied by the latter.[3] This second motion for relief was submitted, and on May 23, 1980, the trial court indicated it would grant it. The minute order of May 23 is quoted below.[4] Two features of that ruling should be

---

[2]Abbott also sought to compel answers to certain interrogatories. However, since both the later dismissal and vacation of dismissal involved only the production of the documents, our discussion focuses solely on that aspect of Abbott's efforts at discovery.

[3]The court's eventual finding that counsel had been grossly negligent implies that the factual conflict was resolved against plaintiff.

[4]"The matter having been submitted and, after due consideration of the plaintiff's declarations in support of its motion to be relieved from a judgment of dismissal, the court finds and rules as follows: The court finds that the plaintiff's counsel has been grossly negligent in his representa-

noted: first, the court found, without any ifs or buts, that counsel had been "grossly negligent in the representation of plaintiff's interests"; second, the court set the dismissal aside only because it felt that that penalty had been inappropriately harsh.[5] In any event, a month later, on June 25, the court found that counsel had substantially complied with the court order. It then granted the motion to be relieved from the judgment of dismissal.[6]

## III

■ It is well established that " 'a motion for relief under [Code of Civil Procedure] section 473 is addressed to the sound discretion of the trial court and in

tion of the plaintiff's interests and accepts as true that the *plaintiff* was not contacted at relevant times.

"The sanctions imposed under Code of Civil Procedure, Section 2034, Subdivisions (b) and (d) must be appropriate to the dereliction and must be just.

"The purpose of the discovery statutes is to enable a party to obtain evidence under the control of his adversary in order to further the efficient and economical disposition of a lawsuit. (*Caryl Richards, Inc.* vs. *Superior Court, supra,* 188 Cal.App.2d 300.) Where a motion to compel has been granted, and discovery has been delayed or denied, the court must make orders in regard to the refusal as are just. (Code Civ. Proc., § 2034, subd. (b)(2).)

"The penalty should be appropriate to the dereliction, and should not exceed that which is required to protect the interests of the party entitled to but denied discovery. Where a motion to compel has previously been granted, the sanction should not operate in such a fashion as to put the prevailing party in a better position than he would have had if he had obtained the discovery sought and it had been completely favorable to his cause. (*Stein* v. *Hassen, supra,* 34 Cal.App.3d 294, 301-303. See Thompson, *Sanctions in California Civil Discovery* (1968) 8 Santa Clara Law. 173, 185-186.)

"The motion is granted on condition that:

"1. Plaintiff's counsel pay defendant's counsel additional fees in the sum of $750.00 within 20 days of service of order. This sum is in addition to the $500.00 ordered on February 14, 1980. The latter sum is likewise to be paid within 20 days for a total payment of $1350.00.

"2. That plaintiff file verified answers to interrogatories within 20 days.

"3. That plaintiff produce documents as requested within 20 days.

"4. Plaintiff's counsel shall file with the court a declaration stating that there has been compliance with the terms of this order within 25 days of the order.

"5. The plaintiff shall make no motion to set for trial until compliance with the order is made.

"6. The order of February 14, 1980, is vacated only so far as it limits the plaintiff's production of evidence per CCP 2034 (B)(2)(ii).

"7. The matter is set for compliance review in Department 84 on June 25, 1980. Compliance may be established by plaintiff's declaration."

[5]While this may be sound discovery law, its application was ill-timed. A motion under section 473 of the Code of Civil Procedure "was never intended as a substitute for an appeal." (*Hagan* v. *Mund's Boilers, Inc.* (1950) 96 Cal.App.2d 101, 106 [214 P.2d 575].) Thus, while the January 24 order to dismiss may have been judicial error, it had never been appealed and was final as of May 23. (See also *Stevens* v. *Superior Court* (1936) 7 Cal.2d 110, 112-113 [59 P.2d 988]; *Russell* v. *Superior Court* (1967) 252 Cal.App.2d 1, 7 [59 Cal.Rptr. 891] *Ferrara* v. *La Sala* (1960) 186 Cal.App.2d 263, 274 [9 Cal.Rptr. 179].) On May 23, the only issue before the court was the one cognizable under section 473: had counsel been excusably negligent? That issue was, of course, decisively resolved against plaintiff.

[6]The record reveals considerable controversy on the question whether plaintiff had really complied with the conditions of the May 23 order. It is a fact that Monica never did produce the records of the Seventh Day Adventist Hospital. The trial court found—too charitably, perhaps—that she had produced all the records that were "in existence."

the absence of a clear showing of abuse thereof the exercise of that discretion will not be disturbed on appeal.'" (*Martin* v. *Cook* (1977) 68 Cal.App.3d 799, 807 [137 Cal.Rptr. 434]; *Coyne* v. *Krempels* (1950) 36 Cal.2d 257, 263 [223 P.2d 244].) That discretion, however, " 'is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised *ex gratia,* but a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice.'" (*Benjamin* v. *Dalmo Mfg. Co.* (1948) 31 Cal.2d 523, 526 [190 P.2d 593]; *Bailey* v. *Taaffe* (1866) 29 Cal. 423, 424.)

■ In general, a party who seeks relief under section 473 on the basis of mistake or inadvertence of counsel must demonstrate that such mistake, inadvertence, or general neglect was excusable "because the negligence of the attorney . . . is imputed to his client and may not be offered by the latter as a basis for relief." (*Buckert* v. *Briggs* (1971) 15 Cal.App.3d 296, 301 [93 Cal.Rptr. 61].) The client's redress for inexcusable neglect by counsel is, of course, an action for malpractice. (*Martin* v. *Cook* (1977) 68 Cal.App.3d 799, 809 [137 Cal.Rptr. 434]; *Orange Empire Nat. Bank* v. *Kirk* (1968) 259 Cal.App.2d 347, 353 [66 Cal.Rptr. 240].)[7]

However, an exception to this general rule has developed. "[E]xcepted from the rule are those instances where the attorney's neglect is of that extreme degree amounting to *positive misconduct,* and the person seeking relief is relatively free from negligence. [Citations omitted.] The exception is premised upon the concept the attorney's conduct, in effect, *obliterates the existence of the attorney-client relationship,* and for this reason his negligence should not be imputed to the client." (Italics added.) (*Buckert* v. *Briggs, supra,* at p. 301; see also, *Orange Empire Nat. Bank* v. *Kirk, supra,* at p. 353; *Daley* v. *County of Butte* (1964) 227 Cal.App.2d 380, 391 [38 Cal.Rptr. 693].) ■ Courts applying that exception have emphasized that "[a]n attorney's authority to bind his client does not permit him to impair or destroy the client's cause of action or defense." (*Orange Empire Nat. Bank, supra,* 259 Cal.App.2d at p. 353; *Daley* v. *County of Butte, supra,* 227 Cal.App.2d at p. 391.)

In spite of half-hearted attempts to argue that his counsel's neglect was excusable, plaintiff appears to appreciate that his best hope for an affirmance lies in resort to the *Daley* line of cases: he is, after all, saddled with an amply supported if not compelled trial court finding that counsel's neglect was "gross." The issue, therefore, becomes whether counsel's conduct amounted to

---

[7]From the client's point of view relief under section 473 is, of course, much faster than a malpractice judgment several years down the road. Realistically, however, the mere threat of malpractice liability brings another purse into the settlement negotiations and may thus actually further a speedy disposition.

"positive misconduct" by which plaintiff was "effectually and unknowingly deprived of representation." (*Daley* v. *County of Butte, supra,* 227 Cal.App.2d at p. 391.)

A brief look at the factual circumstances in the cases that fall within the "positive misconduct" exception will make it clear that plaintiff's hopes are misplaced. In *Daley,* plaintiff's attorney failed to serve plaintiff's son in order to join him as a party, which resulted in repeated postponement of trial. He failed to appear at successive pretrial conferences and failed to communicate with court, client or other counsel. Worst of all, he did not sign a substitution of attorney for more than five months, apparently refusing either to get out of the case or to proceed with it. Given all these circumstances, the court concluded that plaintiff "had legal representation only in a nominal and technical sense." (*Daley* v. *County of Butte, supra,* 227 Cal.App.2d at p. 392.)

In *Orange Empire* the attorney, whose client was sued on a guaranty, repeatedly assured the client that he would interpose the defense that the client's signature on the guaranty was a forgery. The attorney failed to file an appearance in the case, and despite advance notice of the trial date, he failed to appear for trial which resulted in a substantial judgment. Throughout this period, the attorney had been contacted many times by his client and had continued to assure him that he was taking care of the case and would take care of the trial. The court focused also on the attorney's failure to file for relief from the judgment within the statutory period, despite his continuing assurances to the client that remedial action would be taken. The client finally sought other counsel after he learned, from his own inquiries, that his original attorney had failed to take any action with respect to the judgment.

Finally, in *Buckert,* the attorney in question failed to notify plaintiffs regarding a new trial date, despite specific promises that he would do so, and did not himself appear at the trial on behalf of plaintiffs. When one of the plaintiffs learned that the trial had taken place, he immediately contacted the attorney who said he thought plaintiffs had lost interest in the case. (None of the plaintiffs had so indicated. In fact, they had requested that the matter be tried as soon as possible.) The attorney told the plaintiff he would seek to have the judgment set aside, and would keep plaintiffs informed of his progress. The attorney did neither and in fact never contacted plaintiffs again. One of the plaintiffs finally wrote to the presiding judge in the case, who informed him of the possibility of relief under section 473. Plaintiffs then obtained the services of another attorney to seek such relief on their behalf. The court concluded that the evidence demonstrated the original attorney was in fact not representing plaintiffs, and indicated that the "[attorney] regarded the attorney-client relationship . . . to be nonexistent and [that the attorney had a] preconceived intention not to act on their behalf." (*Buckert, supra,* 15 Cal.App.3d at p. 301.)

What *Daley, Orange Empire* and *Buckert* have in common is a total failure on the part of counsel to represent the client: each attorney had de facto substituted himself out of the case. Under such circumstances it would have been unconscionable to apply the general rule charging the client with the attorney's neglect. The case before us is, however, quite different. ■ Though counsel grossly mishandled a routine discovery matter, no abandonment of the client appears. The record and counsel's own declaration reveal quite the opposite: after filing the complaint in 1975, he attended Monica's deposition in August 1976, propounded interrogatories to a physician-codefendant and answered four sets of interrogatories by that defendant with whom he eventually settled. In July 1978 he propounded 40 interrogatories and 22 requests for admission to Abbott. When Abbott, in turn, served its request for production of documents, counsel did not ignore them—he did, as noted, obtain four extensions of time, and somehow caused Monica to deliver some or all of the documents requested to his office, though he inexplicably returned them to her. Finally, after the action was dismissed, he started a rescue operation which resulted in the favorable judgment from which Abbott appeals. In brief, though in connection with the production of documents he obviously failed to give effective representation, he did not, in the words of the *Buckert* court, "obliterate the existence of the attorney-client relationship." (*Id.*, at p. 301.)

"The policy that the law favors trying all cases and controversies upon their merits should not be prostituted to permit the slovenly practice of law or to relieve courts of the duty of scrutinizing carefully the affidavits or declarations filed in support of motions for relief to ascertain whether they set forth, with adequate particularity, grounds for relief. [Fn. omitted.] When inexcusable neglect is condoned even tacitly by the courts, they themselves unwittingly become instruments undermining the orderly process of the law." (*Transit Ads, Inc.* v. *Tanner Motor Livery, Ltd.* (1969) 270 Cal.App.2d 275, 282 [75 Cal.Rptr. 848].) Given this concern, the *Daley* exception should be narrowly applied, lest negligent attorneys find that the simplest way to gain the twin goals of rescuing clients from defaults and themselves from malpractice liability, is to rise to ever greater heights of incompetence and professional irresponsibility while, nonetheless, maintaining a beatific attorney-client relationship.

Finally, plaintiff claims that Abbott was not prejudiced by the delay in furnishing the requested documents. We assume for the purpose of argument that this is so. ■■ ■■■ We have, however, found no case which permits the setting aside of a judgment in spite of inexcusable neglect, simply because the other side has not been prejudiced. (See generally *In re Marriage of Park* (1980) 27 Cal.3d 337, 345 [165 Cal.Rptr. 792, 612 P.2d 882]; *Weitz* v.

*Yankosky* (1966) 63 Cal.2d 849, 857 [48 Cal.Rptr. 620, 409 P.2d 700];[8] *Benjamin* v. *Dalmo Mfg. Co., supra,* 31 Cal.3d at pp. 531-532.)

In sum, since the record fails to show the kind of de facto severance of the attorney-client relationship which is necessary to bring the *Daley* doctrine into play, the section 473 relief should not have been granted.

Reversed.

Mosk, J., Richardson, J., Newman, J., Broussard, J., and Reynoso, J., concurred.

**BIRD, C. J.**—I respectfully dissent.

In the name of the " 'orderly process of the law,' " the majority today hold that a trial court may not grant relief to a plaintiff whose lawsuit was dismissed because of the " 'grossly negligent' " conduct of his attorney. (Maj. opn., *ante* at pp. 897-900.) In reaching that conclusion, the majority overlook an important source of judicial power, disregard the public policy which favors the determination of all causes on their merits, and fail to give deference to the trial court's decision. The end result cannot fairly be said to serve the interests of "substantial justice." (*Daley* v. *County of Butte* (1964) 227 Cal.App.2d 380, 390 [38 Cal.Rptr. 693].)

As the majority note, the discretion of a trial court to grant relief from dismissals is not " ' "a mental discretion, to be exercised *ex gratia,* but a legal discretion, to be exercised in conformity with the spirit of the law . . . ." ' " (Maj. opn., *ante* at p. 898.) But the majority err in assuming that section 473 of the Code of Civil Procedure is the only "law" which gives trial courts authority to grant such relief.[1]

California courts have an "inherent equity power under which, aside from [their] statutory authority, [they may] grant relief from a . . . judgment . . . .

---

[8]*Weitz* also disposes of the dissent's suggestion that even if counsel's inexcusable neglect bars relief under section 473, the order should nonetheless be upheld as a proper exercise of the court's inherent equitable power. "To the extent that the court's equity power to grant relief differs from its power under section 473, *the equity power must be considered narrower, not wider.* (See *Wattson* v. *Dillon,* 6 Cal.2d 33, 42 [56 P.2d 220].)" (Italics added.) (63 Cal.2d at p. 857.) In *Wattson,* the court held that a party who seeks to have a default judgment set aside under a court's equity power must make a stronger showing of the excusable nature of his neglect than is necessary to obtain relief under section 473. Thus, in granting equitable relief in both *Hallett* v. *Slaughter* (1943) 22 Cal.2d 552 [140 P.2d 3] and *Higley* v. *Bank of Downey* (1968) 260 Cal.App.2d 640 [67 Cal.Rptr. 365], the courts made clear that counsel in those cases had not been guilty of inexcusable neglect. (22 Cal.2d at p. 556; 260 Cal.App.2d at p. 644.)

[1]Unless otherwise noted, all statutory references are to the Code of Civil Procedure.

[Citation.]" (*Weitz* v. *Yankosky* (1966) 63 Cal.2d 849, 855 [48 Cal.Rptr. 620, 409 P.2d 700].) "Equity's jurisdiction to interfere with final judgments is based upon the absence of a fair, adversary trial in the original action. 'It [is] a settled doctrine of the equitable jurisdiction . . . that where [a] legal judgment was obtained or entered through fraud, mistake, or accident . . . a court of equity [may] interfere . . . and restrain proceedings on the judgment which cannot be conscientiously enforced. . . . The ground for the exercise of this jurisdiction is that there has been no fair adversary trial at law.' (5 Pomeroy, Equity Jurisprudence (Equitable Remedies [2d ed.]), pp. 4671, 4672.)" (*Olivera* v. *Grace* (1942) 19 Cal.2d 570, 575 [122 P.2d 564, 140 A.L.R. 1328].)

As this court recently noted, "A final judgment may be set aside by a court if it has been established that extrinsic factors have prevented one party to the litigation from presenting his or her case. [Citation.] The grounds for such equitable relief are commonly stated as being extrinsic fraud or mistake. However, *those terms are given a broad meaning and tend to encompass almost any set of extrinsic circumstances which deprive a party of a fair adversary hearing.* It does not seem to matter if the particular circumstances qualify as fraudulent or mistaken in the strict sense. [Citations.]" (*In re Marriage of Park* (1980) 27 Cal.3d 337, 342 [165 Cal.Rptr. 792, 612 P.2d 882], italics added; *In re Marriage of Coffin* (1976) 63 Cal.App.3d 139, 149 [133 Cal.Rptr. 583]; *Munoz* v. *Lopez* (1969) 275 Cal.App.2d 178, 181 [79 Cal.Rptr. 563].)

Thus, apart from its discretion under section 473, a court has considerable and broad discretion in equity to grant relief from a judgment on a showing of extrinsic fraud or mistake. Under its equitable jurisdiction, then, a court may provide relief in many situations other than those set forth in the statute.[2] For

---

[2]The majority err in asserting that, as a general matter, a court's equity power is "narrower" than its statutory power. (See maj. opn., *ante* at p. 901, fn. 8.) The majority's position, that relief in equity may not be granted if relief could not have been granted under section 473, is not supported by logic or law.

First, the power of the equity court to set aside a judgment based on the lack of a "fair adversary hearing" is "inherent" in that court. (*Weitz* v. *Yankosky, supra,* 63 Cal.2d at p. 855.) It is obvious that an "inherent" power may be exercised regardless of the existence or conditions of statutory relief. (See the discussion in *Olivera* v. *Grace, supra,* 19 Cal.2d at pp. 573-575.)

Moreover, the basis for relief in equity differs substantially from the basis for relief under the statute. Under section 473, the party seeking relief must show "mistake, inadvertence, surprise, or excusable neglect" in order to succeed. By contrast, to obtain relief in equity, a party must show "extrinsic circumstances which deprive[d] [that] party of a fair adversary hearing." (*In re Marriage of Park, supra,* 27 Cal.3d at p. 342.) Nothing in these formulations suggest that the availability of relief in equity is contingent on the availability of relief under the statute. To the contrary, courts have always treated these two bases for relief as wholly distinct from each other. (See, e.g., *Olivera* v. *Grace, supra,* 19 Cal.2d at pp. 573-575.)

What is more, the authority cited by the majority simply does not support their position. In *Weitz* v. *Yankosky, supra,* 63 Cal.2d 849, this court considered and rejected the claim that, in the absence of prejudice to the opposing party, a motion for equitable relief need not be made within a "reasonable time." The court explained, "[O]n a motion made under section 473, the movant must show that relief was sought within a 'reasonable time,' whether or not the other

example, courts have long interpreted a party's reliance on a negligent attorney as one kind of "extrinsic mistake" which warrants relief.[3] (*Hallett* v. *Slaughter* (1943) 22 Cal.2d 552, 556-557 [140 P.2d 3]; *Higley* v. *Bank of Downey* (1968) 260 Cal.App.2d 640, 644 [67 Cal.Rptr. 365]; *Orange Empire Nat. Bank* v. *Kirk, supra,* 259 Cal.App.2d at pp. 352-354.) Against this background, the trial court's authority to grant equitable relief on the basis of "extrinsic mistake" in this case is clear.

"Although the law ordinarily charges the client with the inexcusable neglect of his attorney, . . . there are exceptional cases in which the client who is relatively free from personal neglect will be relieved from a default or dismissal attributable to the inaction or procrastination of his counsel. [Citations.] This is particularly true where the attorney's failure to represent the client amounts to positive misconduct. [Citation.] *An attorney's authority to bind his client does not permit him to impair or destroy the client's cause of action or defense.* [Citation.]" (*Orange Empire Nat. Bank* v. *Kirk, supra,* 259 Cal.App.2d at p. 353, italics added.)

If the attorney's negligence is clear and inexcusable, the focus of inquiry in deciding whether to grant relief shifts to the client. (*Orange Empire Nat. Bank* v. *Kirk, supra,* 259 Cal.App.2d at p. 353; see *Conway* v. *Municipal Court* (1980) 107 Cal.App.3d 1009, 1018-1019 [166 Cal.Rptr. 246].) "Where the mistake is not that of the [party] but of his attorney, it appears that greater tolerance in granting relief has been extended. It is stated in *Stub* v. *Harrison* [1939] 35 Cal.App.2d 685, at pages 689, 690 [96 P.2d 979]: [¶] '. . . The

party suffered any prejudice from the delay . . . . If lack of prejudice will not automatically enable one to succeed when making a motion under section 473, it should not *automatically* enable one who *fails* to make his motion within [the statutory time limit] to set aside the judgment by appealing to the *equity* powers of the court. To hold otherwise would encourage litigants to wait until the [statutory time limit] elapses before moving to set a default judgment aside. To the extent that the court's equity power to grant relief differs from its power under section 473, the equity power must be considered narrower, not wider." (*Id.,* at p. 857.)

When read in its proper context, it is apparent that this last sentence—cited by the majority as a general limitation on the equity power of the court—refers only to the applicability of the "reasonable time" requirement to an action for equitable relief.

Nor does the *Weitz* court's citation of *Wattson* v. *Dillon* (1936) 6 Cal.2d 33, 42 [56 P.2d 220] lend support to the majority's position. On the page cited, the *Wattson* court, suggesting that the party's delay in discovering his own error might have been justified as "reasonable" if the action for relief had been brought under section 473, found that the delay constituted laches sufficient to foreclose relief in equity. " 'The breadth of the provisions of the statute may not . . . properly be construed as an attempt to broaden the powers of a court of equity.' " (*Ibid.*) *Wattson* therefore stands for the unremarkable proposition that one seeking relief in equity must establish a basis for that relief under equitable, not statutory, principles. The *Wattson* court noted that the moving party there had made no claims of collusion or fraud, but that the default was caused by his own neglect. (*Ibid.*) By contast, as discussed *infra,* the justification for relief in this case is *not* the neglect of the party, but "extrinsic fraud or mistake."

[3]In fact, one of the three cases cited by the majority as an exception to section 473 was actually decided under the court's equitable power. (See *Orange Empire Nat. Bank* v. *Kirk* (1968) 259 Cal.App.2d 347, 352-353 [66 Cal.Rptr. 240].)

courts . . . are somewhat loath to penalize a litigant on account of some omission on the part of his attorney, particularly where the litigant has acted promptly and has relied . . . upon the attorney to protect his rights.'" (*Dingwall* v. *Vangas, Inc.* (1963) 218 Cal.App.2d 108, 113 [32 Cal.Rptr. 351] [decided under § 473].)

The majority attempt to distinguish the case at hand from *Orange Empire* and other cases granting relief in similar circumstances, but that attempt is not convincing. The distinction between one attorney's "positive misconduct" and another's "gross negligence" is, at best, elusive; the factual circumstances of the two cases are simply not as dissimilar as the majority claim. In *Orange Empire,* the court concluded that a plaintiff had been "unknowingly deprived of effective representation by counsel's failure to serve process, to appear at the pretrial conference, [or] to communicate with the court, client, and other counsel . . . ." (*Orange Empire Nat. Bank* v. *Kirk, supra,* 259 Cal.App.2d at p. 353.) Like *Orange Empire,* the record in this case indicates that, aside from an initial flurry of activity, plaintiff's counsel took virtually no action with respect to this case. Beginning in November 1979, counsel failed to appear at a hearing on a motion to compel production of documents, failed to comply with the court order granting that motion, failed again to appear at a hearing when the motion was renewed, and failed again to comply when the motion was granted. When counsel did not appear at a hearing on defendant's motion to dismiss, the court dismissed the action. *At no time during this period was counsel in contact with his client.* Can it be reasonably doubted that in the chain of events leading to dismissal the plaintiff was "unknowingly deprived of effective representation"? (*Ibid.*) It was only when counsel was confronted with the dismissal of plaintiff's lawsuit and, no doubt, began to contemplate the unpleasant possibility of a malpractice action against himself that he resumed even a minimal interest in the case. The resumption of activity *after* the case had been dismissed cannot change the fact that plaintiff was essentially left without counsel at critical times during the course of this litigation.

What is more, finely drawn distinctions between the facts of this case and others are not appropriate here. The rule of *Orange Empire* is not, as the majority contend, a judically created exception to a statute which must, therefore, be "narrowly applied." (See maj. opn., *ante* at p. 900.) Rather, the rule is grounded in the court's broad and "inherent equity power" (*Weitz* v. *Yankosky, supra,* 63 Cal.2d at p. 855) and provides ample support for the trial court's judgment here.[4]

---

[4]The motion and affidavit filed by the plaintiff, although phrased in terms of section 473, also state a claim for equitable relief. Consistent with that claim, the trial court found that plaintiff's counsel had been "grossly negligent" and that "*plaintiff* was not contacted at relevant times." The court did not specifically refer to its equitable power when it announced its decision to grant relief. However, since that decision was clearly within the equitable power of the court to make

In their haste to condemn this erring attorney, the majority not only overlook the court's equitable power but also give no more than lip service to the general rule that an order *granting* relief from dismissal or default will ordinarily be upheld under two well established principles. (5 Witkin, Cal. Procedure (2d ed. 1971) Attack on Judgement in Trial Court, § 162, p. 3735.) First, "[a] motion to set aside a default judgment is addressed to the sound discretion of the trial court, and, in the absence of a clear showing of abuse of discretion where the trial court grants the motion, the appellate court will not disturb the order." (*Weitz* v. *Yankosky, supra,* 63 Cal.2d at p. 854.) Second, "[i]t is the policy of the law to favor, wherever possible, a hearing on the merits, and appellate courts are much more disposed to affirm an order where the result is to compel a trial upon the merits than they are when the judgment . . . is allowed to stand . . . ." (*Ibid.*) It is in close cases like this one that deference to the trial court's judgment is most appropriate.

The majority override these usually controlling principles, and declare the trial court's order an abuse of discretion, in the interest of the " 'orderly process of the law.' " (Maj. opn., *ante* at p. 900.) Certainly courts have an interest in ensuring the prompt and orderly disposition of lawsuits. Although the "[d]efendant is entitled to the weight of the policy underlying the dismissal statute, which seeks to prevent unreasonable delays in litigation [, that] policy . . . is *less powerful* than that which seeks to dispose of litigation on the merits rather than on procedural grounds." (*Daley* v. *County of Butte, supra,* 227 Cal. App.2d at p. 390, italics added.)

Moreover, it is not necessary to so drastically limit the trial court's discretion in order to preserve the orderly process of the law. The interests of other parties and of justice are more than adequately protected by existing safeguards. (See generally 5 Witkin, Cal. Procedure, *supra,* Attack on Judgment in Trial Court, §§ 192, 194, pp. 3763, 3765-3766.) A motion addressed to a court's equity power is, of course, vulnerable to equitable defenses such as laches. (*Olivera* v. *Grace, supra,* 19 Cal.2d at p. 575; *In re Marriage of Coffin, supra,* 63 Cal. App.3d at p. 155.) Also, relief in equity is not available if the other party can show prejudice. (*Ibid.*) In addition, the trial court may, where appropriate, impose costs upon the moving party. (See *Weitz* v. *Yankosky, supra,* 63 Cal.2d at p. 859.) Furthermore, the aggrieved party must seek relief within " 'a reasonable time' " (*id.,* at pp. 856-857; *Orange Empire Nat. Bank* v. *Kirk, supra,* 259 Cal.App.2d at p. 355; *Davis* v. *Davis* (1960) 185 Cal.App.2d 788, 792 [8 Cal.Rptr. 874]), and must plead "facts from which it can be ascertained that the plaintiff has a sufficiently meritorious claim to entitle him to a trial of the issue . . . ." (*Olivera* v. *Grace, supra,* 19 Cal.2d at p. 579; see *Turner* v. *Allen* (1961) 189 Cal.App.2d 753, 758-759 [11 Cal.Rptr. 630].)

under the facts of this case, the judgment must be affirmed regardless of the grounds actually relied upon. (See *Munoz* v. *Lopez, supra,* 275 Cal.App.2d at pp. 180-182; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 226, 228, pp. 4215-4216, 4217.)

Rather than rely on these existing safeguards to prevent abuse by irresponsible or incompetent attorneys, the majority conclude that relief must be withheld from a concededly blameless plaintiff. As a result, plaintiff is left with only a malpractice action against his attorney. The adequacy of such a remedy, however, has been questioned by a number of commentators, and for good reason. (See generally Mazor, *Power and Responsibility in the Attorney-Client Relation* (1968) 20 Stan.L.Rev. 1120, 1134-1135, and cases cited therein.)

To recover in a malpractice action, "a client must show that but for his attorney's negligence he would have been successful in the original litigation . . . ." (Note, *Attorney Malpractice* (1963) 63 Colum.L.Rev. 1292, 1307, fn. omitted.) "Few malpractice litigants seem able to survive this 'trial within a trial.'" (Mazor, *supra,* 20 Stan.L.Rev. at p. 1135, fn. omitted.) Obviously, this burden is "especially difficult to meet when the attorney's conduct prevented the client from bringing his original cause of action . . . . Moreover, a client whose original claim was dismissed must, in order to establish the extent of his damages, prove the amount of the judgment that he would have recovered had his attorney not been negligent." (Note, *Attorney Malpractice, supra,* 63 Colum.L.Rev. at pp. 1307-1308, fns. omitted.) These difficulties make the outcome of malpractice actions in cases like this far from certain. They are a poor substitute for equitable relief.

Certainly, courts have an interest in preventing attorneys from rising to "ever greater heights of incompetence and professional irresponsibility" (maj. opn., *ante,* at p. 900), but that interest cannot be allowed to override the court's fundamental responsibility to do justice. Existing law is more than sufficient to protect the interests asserted by the majority. Thus, their disregard of the general principles favoring affirmance in this case is not justified. The trial court's broad equitable discretion and the deference it is entitled to from appellate courts make the majority's reversal of its judgment inappropriate. I would affirm the judgment.