[L. A. No. 14405.   In Bank.—April 1, 1936.]

R. A. WATTSON et al., Respondents, v. DAN L. DILLON et al., Appellants.

Fred W. Heath for Appellants.

Halverson & Halverson and Byron Halverson for Respondents.

SEAWELL, J.—Since the petition for hearing was granted by this court in the above-entitled cause, we have given further consideration to the opinion and decision as prepared and rendered by the District Court of Appeal, Fourth Appellate District, and are satisfied with the conclusion reached by said Appellate Court. We therefore adopt the major portions of said opinion, delivered by Jennings, J., as our own. The portions enclosed in quotation marks indicate the portions taken from the opinion of said District Court of Appeal, and together with such observations as we have added thereto, constitute our decision in the cause. The opinion follows:

"The plaintiffs instituted this action for the purpose of vacating a final judgment rendered against them in a prior action wherein they were defendants and the defendants Dan L. Dillon and Lilly Dillon were plaintiffs. Upon a trial of the action judgment was entered in favor of plaintiffs vacating the former judgment. From this judgment the above-named defendants have appealed.

"The material facts which were developed by the evidence produced during the trial and as to which there is no dispute are as follows: Prior to January 9, 1928, the plaintiff R. A. Wattson had entered into a contract with the city of Los Angeles whereby he agreed to perform certain street improvement work a part of which consisted of the filling of certain canals in Venice. On January 9, 1928, the said plaintiff entered into a contract with the Hollywood Granite Company,

Inc., whereby the corporation agreed to perform a portion of the work which the plaintiff was obligated to perform under his contract with the city. Included in the work covered by this contract was the filling of the canals. At some subsequent date the Hollywood Granite Company, Inc., entered into a contract with the Lewis Construction Company whereby the last-mentioned company agreed to perform the work which the Hollywood Granite Company, Inc., was obligated to perform under its contract with the plaintiff R. A. Wattson. On October 7, 1930, Dan L. Dillon and Lilly Dillon instituted an action in the superior court of Los Angeles county whereby they sought to recover damages for an alleged trespass to real property owned by them. The trespass consisted of the removal of earth from the premises of the plaintiffs. In this action R. A. Wattson, John H. Wattson, Hollywood Granite Company, Inc., and Raymond Lewis, doing business under the fictitious name of Lewis Construction Company, were named as defendants. On October 8, 1930, service of process in the suit was made on the Wattsons. After they had been served with process and on the date of service, John H. Wattson telephoned the agent of the bonding company which had executed a bond in behalf of the Hollywood Granite Company, Inc., guaranteeing to the Wattsons faithful performance of the work to be done under the contract between the Wattsons and the Hollywood Company. In this telephone conversation John H. Wattson informed the agent of the bonding company of the fact that service of process in the suit of *Dillon* v. *Wattson* had been made, that the Wattsons expected the bonding company 'to take care of it', and was advised to send the complaint and summons to the bonding company 'and they would take care of it'. Acting on this advice, John H. Wattson thereupon, on the same date, sent by mail the summons and complaint in the action of *Dillon* v. *Wattson* to the Standard Accident Company. In a letter which accompanied the above-mentioned documents, John H. Wattson stated that he was enclosing a copy of the complaint, referred to his telephone conversation of the same date with the agent of the company, and concluded with the following statement: 'Please be advised that we look entirely to you for protection in this matter.' Receipt of the complaint and summons was acknowledged in a letter sent to R. A.

Wattson by agents of the Standard Accident Company on October 15, 1930, wherein it was stated: 'In connection with the complaint served on you we handed this claim over to our claim department and we understand they took this matter up with the Union Indemnity Company and the latter company will handle this matter.' Approximately a week or ten days after the Wattsons had been served with process, R. A. Wattson had a telephone conversation regarding the action of *Dillon* v. *Wattson* with Raymond Lewis of the Lewis Construction Company and was informed by Lewis 'that the matter had been handled satisfactorily'. No appearance was made in the action of *Dillon* v. *Wattson* by the Wattsons or by anyone in their behalf. Their default for failure to make an appearance was accordingly noted on December 13, 1930. A demurrer to the complaint in said action was interposed by the defendant Raymond Lewis on October 15, 1930. On October 20, 1930, this demurrer was sustained with leave to plaintiffs to amend their complaint. So far as appears the plaintiffs did not, however, amend the complaint as to the defendant Lewis. On May 21, 1931, evidence respecting the damage alleged to have been sustained by the Dillons was presented to the superior court and a judgment after default was rendered in favor of Dan L. Dillon and Lilly Dillon in the amount of $1,575 and costs against R. A. Wattson and John H. Wattson. A writ of execution to enforce collection of the amount specified in the judgment was issued on July 2, 1931. This writ of execution was placed in the hands of the sheriff of Los Angeles county on December 30, 1931, and on December 31, 1931, the sheriff attached a bank account of R. A. Wattson under authority of the writ. This attachment conveyed to the Wattsons notice for the first time that no appearance in the action had been made for them and that judgment by default had been taken against them. On January 4, 1932, they instituted the present equitable action to vacate the judgment.''

█ We are of the view that plaintiffs Wattson from the first did not give the attention to the suit filed against them which ordinarily prudent business men would give to a matter of serious concern. The filing of the suit was no surprise to them, as they had been threatened with suit and efforts to compromise the matter and settle the claim made by Dillon and

his wife against them on account of the taking of their surface soil to fill up the canals which they had contracted with the city of Venice to fill to the level of the surrounding lands had failed. The Wattsons made no investigation whatever as to whether the surety bond covered their liability in the matter, nor did they consult anyone upon whom they could reasonably rely for legal advice either as to their appearance in the action or as to matters of defense, but felt satisfied to pass the matter from their shoulders to the shoulders of the bonding company, which was not a party to the action.

Lewis, who was a codefendant, appeared for himself by demurrer, general and special. Notice of sustaining his demurrer with leave to amend was served October 20, 1930. No appearance was made by the Wattsons. On December 13, 1930, almost two months after decision on the demurrer of Lewis, no appearance having been made by or on behalf of the Wattsons, their default was entered. Their default was noted on December 13, 1930. Judgment was taken on May 21, 1931. On December 30, 1931, a writ of execution was issued and placed in the hands of the sheriff, who made the levy on the following day. The Dillons were unable to locate any property standing in the name of the Wattsons, free of encumbrances, until the levy herein was made.

The trial court found, and seemed to have given considerable weight to the finding which is to the effect that the Wattsons, prior to the instant action, had referred all claims and other matters requiring attention arising out of the said subcontract with Hollywood Granite Company, Inc., and with Raymond Lewis to said bond companies and that all such claims had been satisfactorily adjusted by said companies. It appears from the evidence that Mr. Lewis was not as prompt in his attention to the complaints that were being made by property owners against the manner in which the filling of canals was being done as he should have been, and it is not clear that plaintiffs, knowing what they knew as to his reliability in the matter, were free from blame in relying absolutely upon his promise to take the necessary steps to protect their interests. It is a fair inference from the testimony that the part taken by said bond companies and Lewis in the past was by way of compromise and settlement of damages with the property owners through their claim ad-

justers or officers. No claim is made that the Wattson matter ever came to the attention of an attorney until the day execution was levied. What the facts may have been in the other cases is not material to this case, as negligence will not be justified on the theory that it was the practice or custom of the actor to do the particular act in a negligent or careless manner. ■ The court found that in accordance with the practice of said parties, plaintiffs notified said bond companies of service of process and were told by said companies that if the complaint and summons were sent to the Standard Accident Company it would be duly cared for; that if forwarded they would be attended to; that on October 21, 1930, R. A. Wattson telephoned to Raymond Lewis and was told by him that the matter had been attended to and that "there was nothing further for the above plaintiffs [Wattsons] to do". No vigilance was shown on the part of any of said parties. Neither plaintiffs nor the parties to whom they delivered the complaint and summons consulted an attorney as to plaintiffs' duties or rights, nor was any attempt made by them, or any of them, to settle or compromise the matter after service made.

"The finding which is most material to the appeal is that wherein the trial court found that 'without negligence on the part of above plaintiffs and through mistake and accident the above plaintiffs believed that said complaint and summons had been properly disposed of, and that they had no further knowledge, notice or information regarding the same until December 31, 1931, at which time a levy of execution was made against the bank account of plaintiff R. A. Wattson pursuant to judgment in favor of said Dan L. Dillon and Lilly Dillon'. The question which arises with respect thereto is whether or not it may be declared that the finding that respondents were free from negligence is fairly supported by the evidence which, as has been observed, was undisputed.

"In giving consideration to this question it may be remarked at the outset that the question of negligence is generally one for the trier of facts. This principle has been developed in tort actions which are based on failure to perform a legal duty known to the law as negligence. No citation of authorities is required in support of a principle so

familiar and so thoroughly established. It may be assumed that the principle is applicable to the problem here presented.

"It should next be observed that the present action is one whereby respondents are seeking the aid of equity to relieve them from a judgment duly rendered against them whose enforcement they claim will be unjust and inequitable as to them.

■ "In an action of this character it is settled that equity will afford relief when it is made to appear that the judgment sought to be vacated was rendered as a result of extrinsic fraud practiced on the party who seeks to have it vacated. It is equally well established that mistake furnishes a ground for equitable interposition where enforcement of the judgment would be unconscionable and unjust to the party seeking relief. (*Bacon* v. *Bacon*, 150 Cal. 477, 491 [89 Pac. 317].) The power of equity to grant relief from a final judgment either on the ground of extrinsic fraud or mistake is limited, however, to those cases wherein the fraud or mistake was not the result of negligence on the part of the complainant. (*Jeffords* v. *Young*, 98 Cal. App. 400, 404 [277 Pac. 163].)

■ "It is not pretended that fraud furnished the ground for seeking equitable relief in the instant proceeding. The complaint is bare of any allegation respecting fraud. No evidence tending to show that fraud was practiced on respondents was produced during the trial. No finding indicating the existence of fraud was made by the trial court. It is obvious from the allegations of the complaint and from the evidence presented during the trial that the ground for seeking relief was mistake. ■ As above noted, the court found that through mistake and accident respondents believed that proper disposition of the process served upon them had been made. The only mistake which the evidence indicated was present was that respondents believed that some appearance in the action wherein they were named as defendants would be made in their behalf. It must, however, be conceded that this mistake of itself would not warrant the very broad relief which they sought in the form of a decree vacating a solemn judgment duly rendered upon evidence submitted to the court. Upon respondents rested the further burden of showing that the mistake was not due to their own negligence. . . . "

Conceding all that plaintiffs urge as constituting grounds for annulling the judgment, we are of the opinion that it does not show enough in the circumstances of the instant case to absolve them from the neglect and lack of vigilance. of which they are guilty.

■ "The complaint served upon respondents informed them of the nature of the action. The summons notified them that if they did not appear in the action within the time specified, the plaintiffs in said action would take judgment for the amount demanded in the complaint. The duty was then imposed upon respondents of appearing in the action and of setting up whatever defense they may have had. In default of the performance of this duty they were concluded by the judgment. (*Brum* v. *Ivins*, 154 Cal. 17, 20 [96 Pac. 876, 129 Am. St. Rep. 137].) The evidence shows that their default was not noted until more than two months after they had been served with process. The evidence further shows that more than five months elapsed after default was noted before judgment was rendered. During all of this time respondents made no effort to discover what, if anything, had been done in the action. The suit was a matter of public record. It was open to inspection. The slightest exercise of diligence by respondents would have disclosed that no appearance in their behalf had been made. They made no inquiry. They put forth no effort to discover the status of the case. They consulted no attorney. They remained inactive and quiescent for more than a year after service of process and it was not until the bank account of one of them was attached by virtue of a writ of execution that they exhibited any interest in the proceedings. Under such circumstances, the following language from the decision in *Rudy* v. *Slotwinsky*, 73 Cal. App. 459, at page 466 [238 Pac. 783], is apropos to the situation:

" 'While it is true that one seeking to set aside a judgment is not limited to the relief provided for by section 473, Code of Civil Procedure, ·but may, where the facts justify it, invoke the aid of a court of equity, he must, in doing so, exercise due diligence. The instant case, in our opinion, however, does not present such a situation. Here, as stated, the default was· a matter of public record, open to inspection at all times to the plaintiffs and their attorneys. This fact should have

put them on inquiry which would have led to the discovery of the alleged fraud in the procurement of the judgment.'

"Here, also, the default was a matter of public record open to inspection by respondents. It put them on inquiry which would have immediately disclosed that they were mistaken in their belief that an appearance had been made for them in the action. The uncontradicted evidence, in our opinion, entirely fails to support the trial court's finding that respondents were free from negligence.

"It should finally be observed, that we are not here dealing with an application for relief under the provisions of section 473 of the Code of Civil Procedure. The provisions of that remedial statute are broad enough to relieve a party from a judgment taken against him through his neglect if the court to whom the application is addressed can discover some reasonable excuse for such neglect. The breadth of the provisions of the statute may not, however, properly be construed as an attempt to broaden the powers of a court of equity in determining its jurisdiction in an independent proceeding. The application for relief under the statute is addressed to the discretion of the trial court within a limited time and before the judgment has become final. The institution of an independent action to vacate a judgment calls for the exercise of equitable powers by an independent court based upon established rules. (*Amestoy Estate Co.* v. *City of Los Angeles*, 5 Cal. App. 273, 277 [90 Pac. 42].) One of such rules which is so well established that it is denominated a maxim of jurisprudence in the Civil Code of California is the familiar principle that 'the law helps the vigilant, before those who sleep on their rights'. (Sec. 3527, Civ. Code.) "

In conclusion we may add that there is no claim made that the defendants are in any way responsible for plaintiffs' default. No collusion or fraud is chargeable to defendants. The facts seem to present a clear case of negligence on the part of plaintiffs to give proper attention to a matter which the law exacts of every person upon whom legal service is made. The failure of plaintiffs to appear in the action was not occasioned by a mistake of law or by mistaking one thing for another or by misrepresentation. It was a case of neglecting to do a necessary act. There is no question of illness

on the part of plaintiffs or an attorney whom they had engaged to attend to the matter, which has in proper cases been deemed sufficient cause to relieve the defaulting party. The grounds upon which a judgment legally entered may be set aside must be of a very substantial character. A stronger showing is required to justify the annulment of a judgment than is required for the opening of a default as provided by section 473 of the Code of Civil Procedure. The showing made by the plaintiffs as to a meritorious defense is not so persuasive as to justify a departure from the basic rules of law which must be observed to the end that the stability of judgments may not be weakened by a growing tendency to overturn them for slight causes.

For the reasons stated the judgment is reversed and the trial court is directed to correct its findings in accordance with the views herein expressed and to enter judgment in favor of appellants.

Thompson, J., Shenk, J., Waste, C. J., Curtis, J., Conrey, J., and Langdon, J., concurred.