[Civ. No. 30234. Fourth Dist., Div. Three. Jan. 31, 1984.]

JOSEPH A. LOVATO, Plaintiff and Respondent, v.
SANTA FE INTERNATIONAL CORPORATION,
Defendant and Appellant.

**COUNSEL**

O'Melveny & Myers, John W. Stamper and Joseph L. Golden for Defendant and Appellant.

Robert W. Fraser and Gary S. Gorczyca for Plaintiffs and Respondents.

### Opinion

**WALLIN, J.**—This case involves a default judgment suffered after interrogatories were served on an attorney who had been suspended.

### Facts

Lovato instituted this action in June 1979. Santa Fe International Corporation (Santa Fe) retained Thomas Black to defend it because at that time he was representing Santa Fe in a similar lawsuit. Shortly after the complaint was filed Santa Fe successfully demurred to six of the seven causes of action, then filed an answer and took Lovato's deposition.

In January 1980 Black was suspended from practicing law. As one of the terms of his suspension he was ordered to comply with rule 955 of the California Rules of Court. Rule 955 required Black to notify all clients and opposing counsel in all pending litigation of his suspension and to assist in transferring his cases to another attorney. Black failed to comply with rule 955 and he was ultimately disbarred.

In March 1980 Santa Fe learned from a third party Black had been suspended and fired him. Santa Fe refused to have another lawyer in Black's firm continue representing it. Instead Santa Fe hired attorney John Torribio to represent it in both of Black's Santa Fe cases. The task of transferring the cases was left to Torribio and Black. By mistake a substitution was never accomplished in this case.

Thereafter, without Santa Fe's knowledge, Black purported to continue representing it. In October 1980 Lovato served a set of interrogatories on Black, apparently unaware he had been suspended. In December 1980 Black asked Lovato for additional time to respond to the interrogatories, stating answers would be forthcoming and might be reviewed by "new counsel" for Santa Fe. In January 1981 Black requested an additional 10 days to respond. No response to the interrogatories was ever made.

Lovato served a motion to compel answers on Black in February 1981. No opposition was filed and no one appeared for Santa Fe. The motion was granted. Lovato made a motion for sanctions in April 1981 after Black failed to comply with the order compelling answers. Again Lovato served Black and again Black filed no opposition and did not appear. The court granted

the motion and ordered Santa Fe's answer stricken. A default was entered followed by a prove-up hearing and a default judgment. It is undisputed Santa Fe never knew about the interrogatories or the discovery motions and default.

In April 1982, Santa Fe learned what had happened. It filed a timely motion to set aside the default and a notice of appeal on the judgment. The motion to set aside the judgment was denied. A notice of appeal of that order was filed. The entire matter is now before this court.

### DISCUSSION

Two separate questions are presented. First, is the default judgment void because Santa Fe did not have notice of the interrogatories or discovery motions? Second, did the trial court err in refusing to set aside the default judgment because it is void or alternatively because it was the result of Black's positive misconduct? We discuss both questions and conclude Santa Fe is entitled to relief.

### I.

█ The default judgment is void under the due process clause of the federal constitution unless Santa Fe had actual or constructive notice of the interrogatories and discovery motions. (Cf., *City of Los Angeles* v. *Morgan* (1951) 105 Cal.App.2d 726, 730 [234 P.2d 319].) Both parties agree Santa Fe had no actual notice. The interrogatories and discovery motion notices were served on Black. Therefore, the judgment is void unless Santa Fe may be charged with constructive notice by virtue of service on Black even though he had been suspended.

█ Ordinarily service on the attorney of record in lieu of personal service on the party provides constructive notice to the party. (See Code Civ. Proc., § 1010 et seq.) The attorney is the agent of his client and notice to the agent is imputed to the principal. (1 Witkin, Summary of Cal. Law (8th ed. 1973) Agency and Employment, § 139 et seq.) But when an attorney is suspended his authority to act on behalf of his client terminates by operation of law. (Bus. & Prof. Code, § 6117.) As a result the agency relationship dissolves like any agency which is not coupled with an interest. (1 Witkin, Cal. Procedure (2d ed. 1970) Attorneys, § 35.) █ It follows service on an attorney during the period of his suspension does not provide constructive notice to the client. (*Antonsen* v. *Pacific Container Co.* (1941) 48 Cal.App.2d 535, 538-539 [120 P.2d 148].) Therefore, Santa Fe did not have actual or constructive notice of the interrogatories or discovery motions.

Opposing counsel "and the trial court proceeded upon the assumption that there had been valid service . . . whereas in truth and in fact there had been no valid service . . . ." (*Antonsen, supra,* 48 Cal.App.2d at p. 538.) Under these circumstances the judgment is not merely voidable, but void for lack of notice. (*City of Los Angeles* v. *Morgan, supra,* 105 Cal.App.2d at p. 730.) Therefore, the order striking Santa Fe's answer and the default judgment must be reversed.

## II.

Turning to the second question, we believe the trial court also erred in refusing to set aside the default judgment either on the ground that it is void or alternatively because Black's positive misconduct constituted extrinsic fraud or mistake.

A void judgment may be set aside either on the theory of its invalidity or on the ground of extrinsic fraud. (5 Witkin, Cal. Procedure (2d ed. 1970) Attack on Judgment in Trial Court, § 182.) On an invalidity theory the trial court has the inherent power to set aside a void judgment. (*Sullivan* v. *Sullivan* (1967) 256 Cal.App.2d 301, 303 [64 Cal.Rptr. 82].) On an extrinsic fraud theory a judgment obtained after service on a suspended attorney may be set aside "upon the ground of constructive [extrinsic] fraud . . . ." (*Antonsen* v. *Pacific Container Co., supra,* 48 Cal.App.2d at p. 539.)

Alternatively, assuming arguendo the default judgment was not void for lack of notice, the trial court erred in refusing to set it aside because Black's positive misconduct constituted extrinsic fraud. An order refusing to set aside a default judgment may be reversed if there has been an abuse of discretion. (*Orange Empire Nat. Bank* v. *Kirk* (1968) 259 Cal.App.2d 347, 352 [66 Cal.Rptr. 240].) "An order denying relief [from default] . . . is subject to closer appellate scrutiny than one granting relief, and doubts will be resolved in favor of the party attempting to get to trial." (*Daley* v. *County of Butte* (1964) 227 Cal.App.2d 380, 389 [38 Cal.Rptr. 693].)

Extrinsic fraud is a broad concept which covers a number of situations. "Its essential characteristic is that it has the effect of preventing a fair adversary hearing, the aggrieved party being deliberately kept in ignorance of the action or proceeding, or in some other way fraudulently prevented from presenting his claim or defense." (5 Witkin, Cal. Procedure (2d ed. 1971) Attack on Judgment in Trial Court, § 183.) "Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent . . .; or where the defendant never

had knowledge of the suit . . .; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; . . . these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons . . . [to] open the case for a new and fair hearing." (*Kulchar* v. *Kulchar* (1969) 1 Cal.3d 467, 471 [462 P.2d 17, 39 A.L.R.3d 1368] quoting *United States* v. *Throckmorton* (1878) 98 U.S. 61, 65-66 [25 L.Ed. 93, 95].)

■ Here Black fraudulently and without authority purported to continue representing Santa Fe. Long after he had been suspended by the bar and fired by Santa Fe, Black accepted the interrogatories on Santa Fe's behalf. He never told Lovato he had been suspended or he had been fired by Santa Fe. Instead he assured Lovato answers to the interrogatories would be forthcoming. He even asked for additional time to respond on two separate occasions. Furthermore, he never told Santa Fe about the interrogatories. Then when Lovato moved to compel answers, and ultimately for sanctions and default, Black again said nothing to Lovato or Santa Fe. As a result Santa Fe was deprived of any opportunity to present its case in court. We hold this misconduct by Black constituted extrinsic fraud.

Lovato argues Santa Fe's own neglect rather than Black's misconduct caused the default. We disagree. Both Santa Fe and Lovato share some of the blame with Black. Santa Fe failed to monitor the case once it fired Black. But Lovato's attorney also failed to investigate Santa Fe's sudden loss of interest in the case even though he had been informed there might be "new counsel" representing Santa Fe. Certainly, Lovato's counsel should have suspected something was wrong. Still, without Black's active deceit the true state of affairs would have been discovered before the default occurred. Therefore, if one compares the relative degrees of fault Santa Fe is "relatively free from personal neglect." (*Daley* v. *County of Butte, supra,* 227 Cal.App.2d at p. 391.)

Finally, Lovato's claim he will be prejudiced if the default is set aside is unsubstantiated. His employment abroad will be ending soon and he can return to help his attorney prepare for trial. Furthermore, many of the "lost witnesses," whose whereabouts were the subject of the original interrogatories, will likely be "found" if those interrogatories are answered. In short, there is no showing Lovato has suffered any prejudice or that injustice will result from trial of the case on the merits.

Under these circumstances we hold it was an abuse of discretion for the trial court to refuse to set aside the default judgment. ■ "[I]t is the policy of the law to favor . . . a hearing on the merits . . . . [T]he law . . . looks with disfavor upon a party who, regardless of the merits of the case,

attempts to take advantage of the mistake, surprise, inadvertence or neglect of his adversary." (*Orange Empire Nat. Bank* v. *Kirk, supra,* 259 Cal.App.2d 347, 352.)

The May 11, 1981, order striking Santa Fe's answer, the December 1, 1981, default judgment, and the July 15, 1982, order refusing to set aside the default judgment are reversed. ██ ██ ██ ██ The case is remanded to the superior court for further proceedings.[1]

Trotter, P. J., concurred.

**SONENSHINE, J.**—I respectfully dissent. The majority holds service of interrogatories on a suspended attorney of record does not provide notice to his former client and therefore the default judgment taken against Santa Fe is void. It relies on *Antonsen* v. *Pacific Container Co.* (1941) 48 Cal.App.2d 535 [120 P.2d 148] in support of its position. However, *Antonsen* is distinguishable. The petitioner, a Washington resident, gave a power of attorney to a California resident for limited purposes. The latter hired an attorney to file suit. One month after the attorney was suspended, he was served with the defendants' answers and cross-complaints. He did not notify the client. Default judgments taken by the defendants were unknown to Antonsen until collection attempts five years later. The court determined Code of Civil Procedure section 286[1] removed the suspended attorney's authority to act and plaintiff could not be charged with knowledge of the invalid service. However, the plaintiff had *no knowledge of the action,* did not direct the filing and did not know the attorney had been suspended. The court found "plaintiff was deprived, *through no fault of his own,* from appearing and presenting his defense . . . ." (*Id.,* at p. 539, italics added.)

Santa Fe knew of the lawsuit, had received service of process, answered and participated in discovery, and although aware of Black's suspension in March of 1980, *did not effectuate* a substitution of attorney until April of 1982. New counsel's failure to complete the substitution,[2] coupled with the failure of Santa Fe's in-house counsel to monitor the case, led to the eventual dismissal of Santa Fe's answer. Relief from default should not be grant-

---

[1]The trial court was not deprived of jurisdiction to set aside the default when Santa Fe filed its first notice of appeal. (*Svistunoff* v. *Svistunoff* (1952) 108 Cal.App.2d 638, 641-642 [239 P.2d 650].)

[1]Section 286. "When an attorney dies, or is removed or suspended, or ceases to act as such, a party to an action, for whom he was acting as attorney, must, before any further proceedings are had against him, be required by the adverse party, by written notice, to appoint another attorney, or to appear in person."

[2]That Black apparently did not sign a substitution is of no moment. Torribo, Miller and Santa Fe could and should have filed notice with the court and Lovato pursuant to Code of Civil Procedure section 284, subdivision 2.

ed if the complaining party has not given "the attention to the suit filed against them which ordinarily prudent businessmen would give to a matter of serious concern." (*Wattson* v. *Dillon* (1936) 6 Cal.2d 33, 37 [56 P.2d 220].)

Under the facts of this case, I fail to see the logic of requiring the proponent of interrogatories to launch an independent investigation of his opponent each and every time discovery is refused or delayed. The *opponent* was the party with knowledge of the suspension and in fact hired new counsel for the two cases. Substitution was effected in the companion case and a favorable judgment received at trial. But neither in-house counsel nor new counsel concerned themselves with the status of the Lovato case. Black's failure to comply with rule 955[3] harmed both Santa Fe and Lovato, but it was Santa Fe who was in a position to prevent the wrong. Lovato, who did not know of the suspension, relying on the record as filed by Santa Fe and proceeding in the manner prescribed by law, should not now suffer. Santa Fe, who knew of the suspension and failed to correct the record as provided in section 284, should not, by its own negligence, be allowed to deprive *itself* of due process.

To allow Santa Fe the protection of Code of Civil Procedure section 286 in this context would be inequitable. The majority concludes lack of constructive notice requires avoidance of the judgment. However, the issue is not lack of notice, but *waiver* of that notice. "[T]he obvious purpose of section 286 is to provide for notice to a party who might otherwise *be taken unawares*. Like any other legal right, this protection may be waived . . . ." (*California Water Service Co.* v. *Edward Sidebotham & Son* (1964) 224 Cal.App.2d 715, 736 [37 Cal.Rptr. 1], italics added.) Any notice given by Lovato would have been merely cumulative. Santa Fe knew it needed and therefore obtained another attorney. There is no duty of opposing party to insist a substitution be filed. The section 286 "requirement may be waived; e.g., where the evidence shows that the client is fully aware of his attorney's death." (1 Witkin, Cal. Procedure (2d ed. 1970) Attorneys, § 35, p. 44.) *City of Los Angeles* v. *Morgan* (1951) 105 Cal.App.2d 726 [234 P.2d 319] is cited by the majority for the proposition a judgment rendered without service of process is void. However, the holding is carefully limited to those situations where there has been no "voluntary appearance *or waiver*" (*id.,* at p. 730, italics added).

---

[3]Santa Fe's contention it should be relieved from default based on Black's positive misconduct is unsupported by the authorities it cites; they deal with attorneys of record who were 1) licensed to practice law, and 2) continued *to be relied upon by their clients* while the positive misconduct was occurring. Santa Fe was not relying on Black and took no action to inform the court or Lovato it had hired new counsel.

And finally, I am not convinced the service of interrogatories on a suspended attorney is invalid as a matter of law. In *Reynolds v. Reynolds* (1943) 21 Cal.2d 580 [134 P.2d 251], a judgment was upheld against a defendant who had by letter discharged his counsel prior to hearing. The court found a client may discharge his attorney at any time. However, during pendency of an action service of papers on the attorney of record "binds the client until the attorney is discharged or substituted out of the case *in the manner provided by law* [citations]. The court is concerned in such cases not with whether the client is represented by an attorney, but whether he has an attorney of record, whether any change in attorneys has been made as provided in section 284 of the Code of Civil Procedure, and whether notice thereof has been given as provided in section 285 of that code. . . . The attorney of record is the *person* the client has named as his agent upon whom service of papers may be made. The statutes informed defendant that if he had no attorney of record the clerk of the court became his agent for the purpose of service. The burden lay upon the defendant to keep an attorney of record or to make such arrangements for notice with the clerk as he thought advisable. [Citation.] If defendant had noted his discharge of Loucks in the record, plaintiff could have made service on the clerk of the court. The record, however, showed Loucks and Phister as counsel, and *the court and opposing counsel were entitled to rely thereon until it was changed in the manner prescribed by law.*" (*Id.,* at pp. 584, 585; italics added.)

I recognize the policy of the law is to encourage trial and disposition on the merits (*Daley v. County of Butte* (1964) 227 Cal.App.2d 380, 389 [38 Cal.Rptr. 693]), however, a motion for relief from default is addressed to the sound discretion of the trial court and its decision will not be disturbed absent a clear showing of abuse. (*Carroll v. Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 898 [187 Cal.Rptr. 592, 654 P.2d 775].) When, as in the present case, discretion is exercised pursuant to the court's inherent *equitable* rather than its statutory powers, relief should be "denied when the complaining party has contributed to the fraud or mistake giving rise to the judgment thus obtained. [Citations.] 'If the complainant was guilty of negligence in permitting the fraud to be practiced or the mistake to occur equity will deny relief.' [Citation.]" (*Kulchar v. Kulchar* (1969) 1 Cal.3d 467, 473 [82 Cal.Rptr. 489, 462 P.2d 17, 39 A.L.R.3d 1368]; *Smith v. Busniewski* (1952) 115 Cal.App.2d 124, 127 [251 P.2d 697].)

I would affirm the judgment.

Respondent's petition for a hearing by the Supreme Court was denied April 19, 1984.