Filed 5/4/22  Vanleeuwen v. E.B.R. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| ROBERT MICHAEL VANLEEUWEN, | |
| Appellant, | E075791 |
| v. | (Super.Ct.No. FLHE1903610) |
| E.B.R., | OPINION |
| Respondent. | |

APPEAL from the Superior Court of Riverside County.  James T. Warren, Judge. (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Reversed with directions.

Robert Michael Vanleeuwen (Tafoya), in pro. per., for Appellant.

No appearance for Respondent.

1

In June 2019, appellant Robert Michael Vanleeuwen (Vanleeuwen)[1] filed a petition to establish a parental relationship with M.R., who is the biological daughter of respondent E.B.R. (Mother).  In August 2019, the family court granted Vanleeuwen a three-year restraining order against Mother.  In August 2020, the family court dismissed the petition and set aside the restraining order.  Vanleeuwen contends the family court violated his constitutional rights by (1) not permitting him to speak during the August 2020 hearing; and (2) setting aside the restraining order without notice.  Further, Vanleeuwen asserts his biological relationship with M.R. was "not sufficiently disproved."  We reverse with directions.

## FACTUAL AND PROCEDURAL HISTORY

M.R. was born in May 2007.  Mother is M.R.'s biological mother.  According to Vanleeuwen, he and Mother met toward the end of their time in high school, and they had a romantic relationship that lasted from 2008 to May 2016.  Also, according to Vanleeuwen, during the relationship he lived with Mother and M.R.  Vanleeuwen asserted he "raised [M.R. and has] always held [her] out as [his] own," and M.R. called him dad.  Mother claimed to not know Vanleeuwen.  A person who was not identified in the record claimed that Mother and Vanleeuwen "went on exactly three dates."[2]

---

[1] Robert Michael Vanleeuwen is appellant's alias.  Appellant's legal name is Robert Michael Tafoya, Jr.

[2] We take judicial notice of the exhibits included in the writ petition filed by Vanleeuwen in Court of Appeal case No. E077508, *Vanleeuwen v. Superior Court*. (Evid. Code, § 452, subd. (d)(1).)

2

In June 2016, Mother obtained a restraining order against Vanleeuwen. In June 2017, in criminal court, Vanleeuwen pled to three misdemeanor counts of violating the restraining order. As part of the plea, Vanleeuwen agreed "to leave the [C]ity of [R]iverside and move back with family in the state of Colorado." Vanleeuwen was in Colorado from August 2017 to March 2018. In March 2018, while in California, Vanleeuwen was arrested for vandalism and for stalking Mother. Vanleeuwen "again pled to a deal in July of 2019."

On June 13, 2019, Vanleeuwen filed a petition to establish a parental relationship with M.R. Vanleeuwen asserted "parentage has been established by [a] Voluntary Declaration of Paternity." Vanleeuwen requested joint custody of M.R. and visitation with M.R. The proof of service for the petition reflected that Mother was personally served by Jazmine Mendiola, who was not a registered process server.

On August 14, 2019, Vanleeuwen requested Mother's default be entered, and the request was granted. On September 10, 2019, without Mother being present, the family court ordered that Vanleeuwen "have visits every 2nd weekend from Friday after school to Sunday at 7pm. [Vanleeuwen] to pick-up and deliver [M.R.]."

On July 17, 2019, Vanleeuwen requested a domestic violence restraining order against Mother. In the request, Vanleeuwen asserted that Mother told him she would kill him and that she " 'would prefer [him] dead.' " He also asserted that, in June 2016, Mother "[f]lung 3+ Gallons of Boiling-Hot water on [him] without cause, threat or provocation." The proof of service for the restraining order request was filed on August 12, 2019. The server was listed as Aaron Dyer, who was not a registered process server.

3

On August 29, 2019, the family court held a hearing on the restraining order request. Mother was not present at the hearing. The court issued a three-year restraining order against Mother.

On September 12, 2019, Vanleeuwen filed a request for joint legal and physical custody of M.R. Vanleeuwen explained that, in his prior petition, he failed to check the appropriate boxes and thus was "not awarded a hearing," hence his renewed request for custody. Vanleeuwen asserted that he was making the "request as the biological & Declared father of [M.R.]"

On September 13, 2019, Vanleeuwen went to the residence of Mother's ex-husband to pick-up M.R. per the September 10, 2019, visitation order. Mother's ex-husband told Vanleeuwen that Mother no longer lived at the residence. On October 5, 2019, Vanleeuwen contacted Mother about picking up M.R. for visitation on October 11. Mother communicated an "intent to further deprive [Vanleeuwen] of [his] right to see [M.R.]" On October 10, 2019, Vanleeuwen contacted the Riverside County District Attorney's Office "to ask what [he] should do" regarding enforcing the visitation order. On October 17, 2019, Vanleeuwen met with an investigator at the district attorney's office. During the meeting, Vanleeuwen asserted his "innocence in all past-allegations."

Mother denied having been served with Vanleeuwen's filings in the instant case. On the same day as Vanleeuwen's meeting—October 17, 2019—the Riverside County District Attorney's Office's Child Abduction Unit filed an ex parte application in the instant case, in the family court, seeking reconsideration of the family court's September 10, 2019, visitation order. (Fam. Code, § 3132.) The family court held a hearing on the application. It is unclear from the minute order who attended the hearing, but Vanleeuwen was given notice of the ex parte application via email. The court found "another party was found to be the father ([R.P.]) on case RIK015419 by judgment on 9/1/09." The court ordered Vanleeuwen to cooperate with the district attorney's office for DNA testing. The court suspended the September 10, 2019, visitation order until genetic testing was completed.

On December 5, 2019, Vanleeuwen filed an opposition to the district attorney's request for reconsideration of the visitation order. Vanleeuwen asserted that Mother was properly served with the June 13, 2019, petition to establish a parental relationship. Further, Vanleeuwen contended that, if the DNA results indicated he was not M.R.'s biological father, then he could still be her father due to his parental relationship with M.R.

On December 9, 2019, Vanleeuwen, Mother, and a member of the district attorney's office appeared in court for the DNA results, but the hearing was continued. The hearing concerning (1) Vanleeuwen's September 12, 2019, request for joint custody of M.R.; and (2) DNA results, was on calendar for January 22, 2020. However, neither Vanleeuwen, Mother, nor a member of the district attorney's office appeared, and the

5

matter was taken off calendar. On February 14, 2020, Vanleeuwen filed another request for joint legal and physical custody of M.R. Vanleeuwen asserted the request was "a resubmit of the request for orders submitted September 2019."

The hearing on the February 14, 2020, request was calendared for April 2020, but then was continued due to the pandemic. The family court held the hearing on June 12, 2020, but only Vanleeuwen was present. The family court again suspended the visitation order. The court permitted "Vanleeuwen to file and serve evidentiary documents prior to the next hearing." The family court ordered the district attorney's office to appear at the next hearing.

On July 10, 2020, Vanleeuwen filed a declaration. In the declaration, Vanleeuwen asserted that Mother had been served at least three times in the case. Further, Vanleeuwen declared, "Over the course of this case, I've presented considerable evidence supporting long-term paternal-relations. It is visibly obvious a family unit once existed. [Exhibit 2 p. 29-30]. It is a fact that cannot be denied." Pages 29 and 30 of Exhibit 2 to the declaration consisted of photographs of people who we assume are Vanleeuwen, Mother, and M.R. Attached to the declaration was a proof of personal service indicating that, on December 9, 2019, Tony Thomas, who is not a registered process servicer, personally served Mother with various documents from this case.

Meanwhile, the Riverside County District Attorney filed charges against Vanleeuwen. Vanleeuwen was arrested on January 10, 2020, and arraigned on January 14, 2020. An information in the criminal case was filed on October 22, 2020. In Count

6

1, Vanleeuwen was accused of attempted kidnapping of M.R. (Pen. Code, §§ 664, 207, subd. (a)), which occurred between June 13, 2019, and August 12, 2020. In Count 2, Vanleeuwen was charged with stalking and threatening Mother (Pen. Code, § 646.9), from June 13, 2019, to August 12, 2020, "when a temporary restraining order and an injunction prohibiting said behavior against [Mother] was in effect."

In Counts 3, 5, 7, 9, 11, 13, 15, and 17, Vanleeuwen was charged with filing false and forged proofs of service in Riverside County Superior Court case No. FLHE1903610 (Pen. Code, § 115), which is the family court number of the instant case. The following are the relevant dates for the alleged false filings: Counts 3, 5, and 7: June 13, 2019; Count 9: August 14, 2019; Count 11: August 29, 2019; Count 13: September 12, 2019; Count 15: October 18, 2019; Count 17: December 5, 2019.

In Counts 4, 6, 8, 10, 12, 14, and 16, Vanleeuwen was charged with perjury (Pen. Code, § 118a). Vanleeuwen allegedly perjured himself in the proof of service declarations filed in Riverside County Superior Court case No. FLHE1903610, i.e., the instant case. The following are the relevant dates for the alleged perjury: Counts 4, 6, and 8: June 13, 2019; Count 10: August 14, 2019; Count 12: September 12, 2019; Count 14: October 18, 2019; and Count 16: December 5, 2019. It was further alleged that Vanleeuwen suffered a prior strike conviction in July 2019 for the offense of making threats to commit a crime that will result in great bodily injury (Pen. Code, § 422, subd. (a)). (Pen. Code, §§ 667, subd. (c), 1170.12, subd. (c)(1).)

In the criminal court, Vanleeuwen moved to set aside the October 22, 2020, information. (Pen. Code, § 995.) The "motion [was] made on the grounds that

7

[Vanleeuwen] was granted joint custody and visitation of [M.R.] through the Family Law Court in Riverside County on 09/10/2019; solicited help from the Riverside District Attorney's Office to enforce the visitation; [and] is not in violation of PC 664/207 [(attempted kidnapping)]."

On March 25, 2021, the criminal court, with the Honorable John D. Molloy presiding, held a hearing on the motion. The criminal court said it had read the preliminary hearing transcript in the case. The criminal court explained, "The unrefuted evidence at the preliminary hearing was that there was no rational basis for [Vanleeuwen] to believe he was the father, given that there was never sexual intercourse. The unrefuted evidence by the witnesses . . . to whom statements were attributed, were that he went on exactly three dates with [Mother]. That being the case, was there a direct but ineffectual act towards the 207? Yes. The direct but ineffectual act was going to the family law court and getting an order by the family law court that would empower the defendant to seek the aid of law enforcement to forcibly remove the child for whatever period from her mother. The overwhelming strength of the evidence at the preliminary hearing was that an attempt 207 did occur, even before he went to speak to the DA. That is a direct act towards the accomplishment of the taking of the child."

In regard to the forgery counts, the criminal court noted that Jazmine Mendiola, who allegedly served the June 13, 2019, petition to establish a parental relationship, had testified at the preliminary hearing. Mendiola testified that it was not her handwriting on the proof of service; that it appeared to be Vanleeuwen's handwriting; that she tried

8

to serve Mother but was unsuccessful; and she told Vanleeuwen that she was unsuccessful.  The criminal court explained, "I cannot reverse when the magistrate['s] holding [order is based] on an issue of credibility because you want me to look at everything and believe that the magistrate should not have believed [Mendiola]."  The criminal court denied the motion (Pen. Code, § 995).

Returning to the instant family law case, on August 12, 2020, the family court held a hearing on Vanleeuwen's February 14, 2020, request for joint legal custody.  At the hearing, Vanleeuwen was self-represented, and he was in custody.  Mother was not present either personally nor through counsel.  At the start of the hearing, the following exchange occurred:

"THE COURT:  So, Mr. Vanleeuwen, I'm going to limit your conversation in this case.  It's my understanding that you are facing some extremely serious felony charges—charges in RIF200018, which could lead to [a] substantial number of years in incarceration if you're convicted.  [¶]  So because of that, I don't want you talking very much about this case, sir, because anything you say here could be used against you in those criminal proceedings.[3]  And part of those charges include charges of filing false documents with this court.  So I think it's extremely important, sir, that you limit your conversation here this morning.  [¶]  Do you understand me, sir?

---

**3** On appeal, Vanleeuwen asserts the August 12, 2020, minute order is incorrect because it reflects that the family court advised Vanleeuwen of his Fifth Amendment rights, but, according to Vanleeuwen, no such advisement was given.  The minute order appears to be accurate as the family court's comment, "[A]nything you say here could be used against you in those criminal proceedings," was a Fifth Amendment advisement.

"MR. VANLEEUWEN: Your Honor, I understand completely my situation, and I also understand the lack of evidence against me, so I'm more than willing to answer any questions that you have.

"THE COURT: No. Mr.—

"MR. VANLEEUWEN: I have not committed any crimes.

"THE COURT: Mr. Vanleeuwen, you're not listening to me. I want you to listen to me. [¶] I don't want you to be on the record here. We have a D.A. investigator who will hear everything that you say, sir, and I'm sure will take it all down. And if you say things that incriminate you, they're going to be [used] in that case against you. [¶] So, please, sir, you don't have an attorney. You're entitled to speak with an attorney before you proceed here this morning, and you don't have an attorney. I don't want to be in a position where your words will come back to be utilized against you in the criminal proceedings."

The family court said, "[T]he main issue I'm concerned about at this particular juncture is the results of the DNA testing." The District Attorney's investigator said the test results reflected that Vanleeuwen was not M.R.'s biological father. Vanleeuwen said he had not received a copy of the DNA results, at which point the family court began discussing Vanleeuwen's in-custody status. The following exchange occurred:

THE COURT: "I can tell you that you're charged with kidnapping, among other things, and that carries a very substantial period of time in State prison. And that's why I don't want you to talk to me about the case. [¶] So at this time—

10

"MR. VANLEEUWEN: I understand, Your Honor, but without ever approaching my daughter without permission, there's no—no—not even a claim of kidnapping.

"THE COURT: Mr. [Vanleeuwen], what did I tell you? [¶] Mr.—

"MR. VANLEEUWEN: Sorry.

"THE COURT: Mr. Vanleeuwen, please don't talk about the case. I'm sure [the district attorney's investigator] is sitting there taking notes and you're not listening to me. I'm giving you a wise advice. [¶] So at this time, I am going to find that Mr. Vanleeuwen is not the father of [M.R.] I am going to—

"MR. VANLEEUWEN: Objection. Hearsay and foundation, Your Honor. [¶] You can't—[¶] Presumed fatherhood has been met. Rebuttal has been met. Your Honor, please. The law states very clearly that fatherhood is not defined by blood. [¶] I raised the child. I love the child. I sacrificed for this child. I'm still facing these charges and not leaving my loyalty to this child. This is not right, Your Honor.

"THE COURT: Thank you. [¶] At this time, the petition—the petition to establish parental relationship is ordered dismissed."

The family court also set aside the temporary restraining order and three-year restraining order that had been issued against Mother as well as "all orders previously made at the domestic violence restraining order [hearing]." The family court explained, "I have sufficient information before me to believe that [Mother] was not properly served and so that is my action at this time."

11

## DISCUSSION

### A. PETITION TO ESTABLISH A PARENTAL RELATIONSHIP

Vanleeuwen contends the family court erred by dismissing his June 13, 2019, petition to establish a parental relationship. Specifically, Vanleeuwen asserts that, during the August 12, 2020, hearing, because the family court prevented him from speaking, he was denied his rights to a fair hearing, to confront his adversary, and to present evidence. Vanleeuwen asserts that a court cannot "force one" into silence under the Fifth Amendment. He contends that he would not have asserted his Fifth Amendment privilege if he had been given the option. Further, if he had been permitted to speak freely, then he would have "call[ed] available witnesses, which included the process servers associated with the action at the time of [the] hearing."

"We independently review due process claims 'because "the ultimate determination of procedural fairness amounts to a question of law." ' " (*Roth v. Jelly* (2020) 45 Cal.App.5th 655, 666.) "[T]he privilege against compelled self-incrimination has been viewed as 'fundamental.' [Citations.] But other rights have been so ranked as well. The right to compulsory process is a 'fundamental' right. [Citations.] Another 'fundamental' right is the right of confrontation. [Citations.] Yet another 'fundamental' right . . . is the right to testify." (*People v. Barnum* (2003) 29 Cal.4th 1210, 1222-1223 (*Barnum*).)

"[T]he privilege against compelled self-incrimination 'says no more than a person shall not be *compelled* to speak. It does not place upon the trial court the duty of informing a *pro se* defendant of his [or her] rights and privileges.' " (*Barnum*, *supra*, 29

12

Cal.4th at p. 1225.)  Nevertheless, if a trial court chooses to give a Fifth Amendment advisement, then it "must proceed carefully in providing an advisement." (*Id.* at p. 1226.)  The court should be careful that "its words do not stray from neutrality toward favoring any one option over another." (*Ibid.*)

In the instant case, the family court went beyond informing Vanleeuwen of his Fifth Amendment privilege by essentially requiring that Vanleeuwen remain silent.  As examples, the family court said, "I don't want you talking very much about this case"; "I think it's extremely important, sir, that you limit your conversation here this morning"; "I don't want you to be on the record here"; "And that's why I don't want you to talk to me about the case"; and "Mr. Vanleeuwen, please don't talk about the case."  The family court appeared to have good intentions in seeking to protect Vanleeuwen from possible self-incrimination; however, the family court's words "stray[ed] from neutrality toward" mandating Vanleeuwen remain silent. (*Barnum*, *supra*, 29 Cal.4th at p. 1226.)

"A trial judge presiding over a case initiated by an incarcerated and self-represented plaintiff . . . faces a significant challenge in balancing his or her obligations to facilitate the ability of the self-represented litigant to be fairly heard, on the one hand, and to refrain from assuming the role of advocate, on the other." (*Holloway v. Quetel* (2015) 242 Cal.App.4th 1425, 1433-1434.)  That balance was particularly difficult in this case given that Vanleeuwen's criminal case was based upon his filings in the instant family law case.  However, as much as it might have behooved Vanleeuwen to remain silent for purposes of his criminal case, it was not the family court's role to order him to

be silent. Accordingly, we conclude the family court erred by essentially mandating Vanleeuwen invoke his right to silence.

Nevertheless, there was arguably a valid reason for not permitting Vanleeuwen to speak about the merits of the matter. The family court believed "[Mother] was not properly served." If Mother were not served, then communicating with Vanleeuwen would have been an improper ex parte communication, in which case, stopping him from speaking was appropriate. (*Nguyen v. Superior Court* (2007) 150 Cal.App.4th 1006, 1013, fn. 2.) The problem, of course, is that a proper hearing regarding service was not conducted.

Sometimes, in court, "things simply go so far awry that the only fair resolution is a 'do-over.'" (*Gamet v. Blanchard* (2001) 91 Cal.App.4th 1276, 1285.) In the instant case, "[e]vents diverged so far from any reasonable person's idea of a fair day in court that a 'do-over' is surely warranted." (*Ibid.*) In particular, because Vanleeuwen was prevented from discussing any issues that related to the criminal matter, which included the proof of service in this case, and the allegedly false proof of service was the basis for dismissal of the petition to establish a parental relationship, we conclude another hearing must be held in which Vanleeuwen is given the opportunity to speak and present evidence, particularly regarding service. (*Lovato v. Santa Fe Internat. Corp.* (1984) 151 Cal.App.3d 549, 554-555 [" 'Where the unsuccessful party has been prevented from exhibiting fully his case . . . there has never been a real contest in the trial or hearing of the case, [which is a] reason[] . . . [to] open the case for a new and fair hearing' "].)

We will reverse the dismissal of the petition to establish a parental relationship. However, given the family court's concerns that Mother did not receive notice of the petition, we will direct the family court to issue an order to show cause to Vanleeuwen as to why the proof of service filed on July 1, 2019, should not be stricken.

B.    RESTRAINING ORDER

Vanleeuwen contends the family court erred by setting aside the August 29, 2019, restraining order without notice.

" ' "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." ' " (*Edward W. v. Lamkins* (2002) 99 Cal.App.4th 516, 529.)

The family court set aside the August 2019 restraining order at a hearing that was meant to be about Vanleeuwen's February 14, 2020, request for joint custody. We conclude the family court erred by setting aside the restraining order when no notice was given that the court would be considering such an action. Accordingly, we will reverse the setting aside of the restraining order. Because the family court is concerned about the alleged lack of service, we will direct the family court to issue an order to show cause directed to Vanleeuwen as to why the restraining order issued on August 29, 2019, should not be vacated due to a failure to serve Mother.

C.    BIOLOGICAL FATHER

Vanleeuwen contends his biological relationship with M.R. was "not suffic[ie]ntly disproved."

The appellant "has the burden of showing reversible error by an adequate record." (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574.) The district attorney's office filed an ex parte application seeking reconsideration of the family court's September 10, 2019, visitation order. (Fam. Code, § 3132.) At the hearing on the application, the family court suspended the September 10, 2019, visitation order "until DNA testing." At the August 12, 2020, hearing, which was supposed to be about Vanleeuwen's February 14, 2020, request for joint custody, the family court said, "[T]he main issue I'm concerned about at this particular juncture is the results of the DNA testing. Has the district attorney's office received those results?"

It is unclear from the record exactly how DNA testing became a focus of the case. We do not have a reporter's transcript of the hearing on the ex parte application from which to gain an understanding of how the issue of DNA testing arose. For example, it is unclear if the district attorney's office argued that Vanleeuwen should only be allowed visitation if he is M.R.'s biological father; if Vanleeuwen argued that he was M.R.'s biological father; or if some other argument was made.

We need to understand in what manner the DNA issue arose because if the issue was raised by Vanleeuwen as part of his petition to establish a parental relationship, then Vanleeuwen bore the burden of proving a parental relationship. (*Huntingdon v. Crowley* (1966) 64 Cal.2d 647, 651.) In such a scenario, the issue on appeal would not

16

be whether the biological relationship was sufficiently disproved; instead, the issue would be whether the family court erred by finding that Vanleeuwen failed to sufficiently prove the relationship. (*Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838 [standard when "appeal turns on a failure of proof at trial" is whether the petitioner's evidence is " ' "uncontradicted and unimpeached" ' "].) In sum, the record is deficient because it fails to establish the procedural context to allow us to understand how the DNA issue arose.

If we were to overlook the lack of procedural context, the record is also inadequate because it appears to be missing some of the evidence pertinent to the issue. For example, the record does not include a copy of the DNA results that were discussed in court on August 12, 2020, despite the record indicating that the results were filed in the family court. Given these issues with the record, we do not examine whether Vanleeuwen's biological fatherhood was "suffic[ie]ntly disproved." In sum, Vanleeuwen's appeal, as it pertains to the biological fatherhood finding, fails due to Vanleeuwen's failure to provide an adequate record.

### D. REMAINING ISSUES

On appeal, Vanleeuwen asserts other errors, such as (1) it was error to permit the district attorney's office to appear in the case; (2) the family court's actions were part of a conspiracy; and (3) the family court should have opened an investigation into M.R.'s welfare.

We begin with the first and second of those three issues. As discussed *ante*, we will reverse the family court's dismissal of the petition to establish a parental

17

relationship and setting aside of the restraining order. If we were to discuss the first and second issues and conclude there were error, there is nothing more we could reverse. Therefore, there is no further relief we can provide Vanleeuwen by addressing those two issues. Accordingly, we decline to address the merits of those two issues. (*Steiner v. Superior Court* (2013) 220 Cal.App.4th 1479, 1485.)

As to the third issue, Vanleeuwen fails to provide a record citation indicating when, in the family court, he requested that the court open an investigation into M.R.'s welfare. (Cal. Rules of Court, rule 8.204(a)(1)(C).) Because it appears the issue was not raised in the family court, we conclude it has been forfeited. (*Kern County Dept. of Child Support Services v. Camacho* (2012) 209 Cal.App.4th 1028, 1038.)

## DISPOSITION

The August 12, 2020, order dismissing the June 13, 2019, petition to establish a parental relationship is reversed. The family court is directed to issue an order to show cause to Vanleeuwen as to why the proof of service filed on July 1, 2019, should not be stricken.

The August 12, 2020, order setting aside the August 29, 2019, restraining order is reversed. The family court is directed to issue an order to show cause directed to Vanleeuwen as to why the restraining order issued on August 29, 2019, should not be vacated due to the failure to serve Mother and the failure to file a proper proof of service.

18

Mother has not appeared in this appeal; Vanleeuwen shall bear his own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5); *County of San Diego Dept. of Child Support Services v. C.P.* (2019) 34 Cal.App.5th 1, 13.)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

McKINSTER
Acting P. J.

FIELDS
J.