Filed 1/27/16  Sauer v. Kerper CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| RICHARD N. SAUER, | D068287 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. RIC1310218) |
| STEVE KERPER, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Riverside County, John Vineyard, Judge.  Affirmed.

Wilson Law Firm and Dennis M. Wilson for Plaintiff and Appellant.

Manning & Kass, Ellrod, Ramirez, Trester, Rinat B. Klier Erlich and Candace E. Kallberg for Defendant and Respondent.

In this case, Dr. Richard Sauer sought to vacate a 2008 judgment in favor of his former real estate broker, Steven Kerper.  For the reasons explained below, we determine there are no grounds for vacating the judgment at this late date.  We thus affirm the judgment denying Dr. Sauer's motion to vacate.

The underlying litigation began in 2005, when Dr. Sauer sued Kerper for allegedly failing to accurately identify properties for sale in 2003. Kerper cross-complained, seeking his sales commission. In February 2008, the court entered final judgment in Kerper's favor (the February 2008 judgment). The judgment was amended several times, including to correct a clerical error by adding a $152,000 damages award and to later include a previously ordered attorney fees award.

In December 2011, Dr. Sauer brought a new action against Kerper seeking to set aside the February 2008 judgment (as amended) on grounds of extrinsic fraud or mistake. Dr. Sauer alleged he first learned of the judgment in March 2011 when he was served with collections documents and that his prior attorney (who was disbarred in 2010) had abandoned him before the February 2008 judgment was entered.

Kerper moved for summary judgment, arguing Dr. Sauer was not entitled to equitable relief because the undisputed facts show Dr. Sauer was not diligent; Dr. Sauer's attorney did not abandon him; and Dr. Sauer could not prove his original claims were meritorious. The court granted Kerper's motion based on its finding that Dr. Sauer's claims and defenses in the prior action had no merit. The court thus entered judgment in Kerper's favor.

We affirm this judgment, but on different grounds. We determine the undisputed facts show Dr. Sauer did not exercise reasonable diligence concerning his initial lawsuit against Kerper. Thus there was no proper equitable basis to vacate the February 2008 judgment or the amendments to the judgment. Based on this conclusion, we do not reach the merits of the underlying claims and defenses.

2

FACTUAL AND PROCEDURAL SUMMARY

I. *Background*[1]

In November 2002, Dr. Sauer retained real estate broker Kerper (and/or his agency, collectively Kerper) to assist him in selling several parcels of undeveloped property. The parties signed a written listing agreement in which Dr. Sauer agreed to pay Kerper a 10 percent commission fee. The agreement identified six lots by parcel numbers (the Properties). In the listing agreement, Dr. Sauer warranted he had "OWNERSHIP, TITLE, AND AUTHORITY" over the Properties, with the qualification that: "Dr. Sauer has full control over all shares and he will obtain full title to the property at least forty-five days prior to close of escrow."

At the time, Dr. Sauer understood he had an ownership interest in only five of the six parcels and he did not own the sixth parcel (Parcel 28). Dr. Sauer was also aware that other individuals had minority interests in each of the five parcels, but he believed he could purchase their interests before the close of escrow. Dr. Sauer told Kerper or his assistant he did not own the sixth parcel and that if there were any questions about his ownership status, Kerper could look up the properties in public records or conduct a physical inspection of the properties.

In marketing materials, Kerper listed the six parcels of properties for sale, including Parcel 28. In May 2003, a third party (Buyer) offered to purchase the six

---

[1]    Under well-settled rules, we summarize the relevant background facts in the light most favorable to Dr. Sauer. (*Faust v. California Portland Cement Co.* (2007) 150 Cal.App.4th 864, 877.)

parcels for $1.49 million. A few days later, Dr. Sauer signed a written counteroffer identifying the properties for sale by six separate parcel numbers (including Parcel 28).

After the parties reached a final agreement on terms and price ($1.52 million), Dr. Sauer became aware the sixth parcel was included in the deal, but that he would be unable to obtain title to this parcel. In September 2003, Dr. Sauer drafted a memorandum clarifying that he owned only five of the parcels and offering to sell these five parcels for a total price of $1,650,000 (an increase in the prior price for the six identified parcels).

The Buyer responded it was willing to pay $1,266,000 for the five parcels (calculated based on determining the per parcel price at the agreed sales price). After Dr. Sauer refused, the Buyer's assignee (Assignee Buyer) sued Sauer. Under the parties' agreement, the parties submitted the matter to arbitration.

After a two-day arbitration hearing held in July 2004, the arbitrator found in favor of the Assignee Buyer. The arbitrator found: "The ownership error which killed the sale and gave birth to this litigation was solely created by [Dr. Sauer] and no one else involved had any clue to the flaw [regarding ownership of the sixth property] until title reports emerged. The unilateral nature of this error is clearly upon [Dr. Sauer] and entitle[d] [Assignee Buyer] to the available legal remedies." The arbitrator awarded Assignee Buyer specific performance requiring Dr. Sauer to transfer the five properties at the agreed per-parcel price; monetary damages; and prevailing party attorney fees.

In November 2004, the superior court entered a judgment confirming this arbitration award.

4

## II. *Dr. Sauer's First Lawsuit Against Kerper*

Four months later, in March 2005, Dr. Sauer—represented by attorney Frank Ferris—sued Kerper, alleging Kerper was responsible for the misidentification of the properties for sale. Kerper filed a cross-complaint, seeking payment of his commission fee. These matters were consolidated with another action involving the Properties.

In March 2007, Dr. Sauer (represented by Ferris) filed a third amended complaint against Kerper, alleging breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, fraud, and negligent misrepresentation. On the fiduciary duty and bad faith claims, Sauer alleged that Kerper breached his duties by failing to confirm the accuracy of the Properties' legal description; continuing to represent to third parties that six parcels were for sale despite his awareness that Dr. Sauer owned only five parcels; and failing to inform Dr. Sauer of the "inaccuracy of the documents [he] was signing."

After the court sustained Kerper's demurrer to the fraud and negligent misrepresentation causes of action, Kerper moved for summary judgment on the two remaining claims (breach of fiduciary duty and bad faith), and on Kerper's cross-complaint for his $152,000 commission fee. Kerper argued the undisputed facts showed Dr. Sauer guaranteed in the listing agreement that he was the property owner and warranted delivery of clear title; Kerper owed no duty to independently confirm the accuracy of this title information; and Kerper was entitled to his commission because he presented a ready and willing buyer. Dr. Sauer did not file an opposition to the motion, and the court granted the motion.

In February 2008, the court entered judgment against Dr. Sauer on his complaint and in favor of Kerper on his cross-complaint. The judgment stated that defendants "shall recover their costs pursuant to post judgment procedure." Several months later, in 2008, the court entered an amended judgment nunc pro tunc to correct a "clerical error" in the judgment by adding damages of $152,000 reflecting Kerper's commission fee. That same month, the court found Kerper was entitled to prevailing party attorney fees in the amount of $35,232. More than two years later, on December 7, 2010, the court entered an amended judgment to include these attorney fees. The record is not clear as to the reason for the delay in adding attorney fees to the judgment.

### III. *Current Action*

#### A. *Dr. Sauer's Complaint Seeking to Vacate February 2008 Judgment*

In December 2011, Dr. Sauer filed an independent action against Kerper seeking to set aside the February 2008 judgment and amendments to the judgment. Dr. Sauer alleged the 2008 judgment should be set aside based on "extrinsic mistake and extrinsic fraud" because his prior attorney (Ferris) "abandoned [him], [and] so utterly failed to represent him in the motions for summary judgment and in the motions to amend the judgment as to constitute actual misconduct . . . ."

In the complaint, Dr. Sauer alleged Ferris never informed him of the February 2008 judgment (or amendments), and he "first learned" of the February 2008 judgment in March 2011, when Kerper personally served him with debtor's examination documents seeking to enforce the judgment. Dr. Sauer alleged he was diligent in seeking relief because he filed the complaint within 10 months after learning of the February 2008

6

judgment, and described the steps his new attorneys took to investigate the basis for the judgment. Dr. Sauer alleged his prior claim for breach of fiduciary duty was meritorious, but acknowledged he was *not* seeking to revive the other claims that had been dismissed by demurrer in the prior action (fraud and negligent misrepresentation). He also alleged he had a meritorious defense to Kerper's commission claim.

Dr. Sauer attached information to his complaint showing that on December 17, 2010, the State Bar of California disbarred Ferris for committing misconduct in his representation of three former clients (not Dr. Sauer). This misconduct consisted primarily of misappropriating client funds and improperly borrowing money from these clients.

## B. *Kerper's Summary Judgment Motion*

Kerper moved for summary judgment and/or summary adjudication, arguing the undisputed facts showed there was no equitable basis for vacating the prior final judgment because: (1) Dr. Sauer was represented by Ferris at all relevant times and was not abandoned by him; (2) Dr. Sauer was not diligent in seeking relief after February 2008 and Kerper would be unduly prejudiced if the matter is reopened; and (3) Dr. Sauer's underlying claims were not meritorious.

On the abandonment/diligence issue, Kerper submitted Dr. Sauer's deposition testimony in which he stated that from about 2003 until early or mid-2010, he would meet with his attorney (Ferris) on average "[s]everal times a year" and that "[a]t times" he would speak with him once a month. Dr. Sauer said they often met at local restaurants to discuss the lawsuit. Dr. Sauer said he never inquired about a trial date on his lawsuit

7

because he "hired an attorney to deal with all of that."  Sauer said he first learned of the February 2008 judgment in March 2011 when Kerper's attorneys served him with the debtor's examination papers.  When asked whether he thought Ferris was still representing him at that point, Dr. Sauer said he was "pretty sure" Ferris was no longer representing him, but had "thought things were still perking along . . . ."  Dr. Sauer said he understood Ferris was "getting into his difficulties" in about late 2010, and he did not speak with Ferris after that time.

Kerper also produced evidence that Ferris remained involved in the consolidated actions for a few months *after* entry of the February 2008 summary judgment.  For example, about one month after the summary judgment, Ferris signed a stipulation to continue a mandatory settlement conference concerning the remaining claims in the coordinated action.  Two months later, the trial judge spoke on the telephone with Ferris during the settlement conference.  On May 1, 2008, the Assignee Buyers' attorney spoke with Ferris *and Dr. Sauer* about the remaining coordinated litigation.  In July 2008, Ferris appeared telephonically at a sanctions hearing.

Kerper also presented evidence and arguments pertaining to the merits of the prior action.  Kerper argued Dr. Sauer was collaterally estopped from relitigating the arbitrator's factual findings that Dr. Sauer was solely responsible for the misidentification of the Properties.  Kerper also contended that Dr. Sauer's signatures on the listing agreement and counteroffer precluded him from prevailing on his claim that Kerper was responsible for the misidentification of the Properties.

8

In opposing the summary judgment motion, Sauer presented his deposition testimony in which he stated that before the Properties were listed, he told Kerper or Kerper's assistant that he owned only five parcels. Dr. Sauer testified that when he signed the listing agreement he "thought it listed the five [parcels] that we owned." He said he was relying on Kerper's office to draft the listing agreement. He said no one explained to him that he should identify the sixth parcel only if he owned it, or he should condition the listing on his obtaining ownership of it.

On the diligence issues, Dr. Sauer focused on the actions of his new attorney (Dennis Wilson) *after* March 2011. He presented Wilson's declaration in which Wilson stated that after he was retained by Dr. Sauer, it took several months to locate and then analyze the relevant case files. Wilson said he had "difficulty communicating with Ferris, because a warrant for [Ferris's] arrest was issued on or about March 30, 2011, and a public announcement was made by the Sacramento County District Attorney's office." Wilson also said "I tried to get Ferris's details about the motion for summary judgment . . . but Ferris was hospitalized because of atrial fibrillation and had a pacemaker installed. [¶] . . . I was able to meet with Ferris after the surgery on October 10, 2011, [and] Ferris confirmed that he had not filed an opposition to the motion for summary judgment. [¶] . . . [¶] . . . Having confirmed the facts as best I could, I then had to research how the law applied to these facts, draft the complaint, and file it."

Dr. Sauer did not submit his own declaration. But he proffered his deposition testimony in which he stated he did not "believe" he was previously aware of Kerper's summary judgment motion in the underlying action and that he first became aware of the

9

February 2008 judgment when the debtor's examination documents were served on him in early 2011.  Dr. Sauer also submitted Ferris's deposition testimony in which Ferris said he *did not recall* any discussions with Dr. Sauer regarding Kerper's summary judgment motion, or about the fact that the court granted the motion.  Ferris said that at that time, he was having "tremendous financial problems" and "health problems," including atrial fibrillation and diabetes.  He explained that his financial problems began in about 2006 or 2007, and have not yet "resolved themselves . . . ."

### C. *Court's Ruling*

After considering the parties' submissions and conducting a hearing, the court granted Kerper's summary judgment motion on the ground that "[Dr.] Sauer is unable to demonstrate that he had a meritorious case and/or a meritorious defense in the original action that would likely result in judgment in [his] favor."  The court reasoned that Dr. Sauer's execution of the listing agreement—which contained warranty and indemnity provisions—precluded him from recovering against Kerper.  The court further found Kerper was entitled to his $152,000 commission as a matter of law because "Kerper brought plaintiff a ready, willing and able purchaser under the terms of the listing agreement."

The court rejected certain of Kerper's alternate arguments.  It found Dr. Sauer "demonstrated diligence *after* discovering the judgment."  (Italics added.)  The court stated that although "there is clear prejudice to defendant Kerper, [the prejudice] is offset by [Dr. Sauer's] satisfactory excuse and showing of diligence."  The court also found the collateral estoppel doctrine inapplicable, concluding the issues litigated in the arbitration

10

proceeding between the Assignee Buyer and Dr. Sauer were "not the same" as the issues presented in the litigation between Kerper and Dr. Sauer.

DISCUSSION

I. *Summary Judgment Review Standards*

A summary judgment motion "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)[2] A triable issue of material fact exists only if "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).)

The issues on a summary judgment motion are framed by the pleadings. (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250.) A moving defendant has the initial burden to show one or more elements of the plaintiff's cause of action cannot be established, or that there is a complete defense to the claim. (*Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 444.) If the defendant meets this burden, the burden shifts to the plaintiff to show the existence of a triable issue. (*Ibid.*) The plaintiff may not rely upon the pleading allegations but instead must set forth *specific facts* based on *admissible evidence* showing a triable issue of material fact on the cause of

---

2       All further statutory references are to the Code of Civil Procedure.

11

action.  (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476-477; *Trujillo v. First American Registry, Inc.* (2007) 157 Cal.App.4th 628, 635.)

"Because a summary judgment denies the adversary party a trial, [the motion] should be granted with caution."  (*Colores v. Board of Trustees* (2003) 105 Cal.App.4th 1293, 1305.)  We consider all of the evidence and inferences reasonably drawn from the evidence, and view the evidence in the light most favorable to the opposing party.  (*Aguilar, supra*, 25 Cal.4th at p. 843.)  We review a summary judgment de novo and are not bound by the trial court's stated reasons.  (*Blue Shield of California Life & Health Ins. Co. v. Superior Court* (2011) 192 Cal.App.4th 727, 732.)

II.  *Legal Principles Governing an Equitable Action to Vacate Prior Judgment*

A judgment "may be set aside in equity when it is obtained by extrinsic fraud or mistake. . . .  The 'essential characteristic' of extrinsic fraud 'is that it has the effect of preventing a fair adversary hearing, the aggrieved party being deliberately kept in ignorance of the action or proceeding, or in some other way fraudulently prevented from presenting his claim or defense.' . . .  Extrinsic mistake is 'a term broadly applied when circumstances extrinsic to the litigation have unfairly cost a party a hearing on the merits. . . .' "  (*Parage v. Couedel* (1997) 60 Cal.App.4th 1037, 1044; see *Kulchar v. Kulchar* (1969) 1 Cal.3d 467, 471-473.)  Generally, to prevail on an extrinsic mistake theory, the party seeking the relief must show:  (1) a meritorious case; (2) a satisfactory excuse for not presenting its claim or defense in the prior action; and (3) diligence in seeking to set aside the order or judgment upon discovery.  (*Stiles v. Wallis* (1983) 147 Cal.App.3d 1143, 1147-1148 (*Stiles*).)

12

In cases where a party claims his or her attorney was responsible for the adverse ruling or judgment, relief is generally not available because the client is charged with the attorney's inaction or neglect. (*Carroll v. Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 895, 898; *Seacall Dev., LTD v. Santa Monica Rent Control Bd.* (1999) 73 Cal.App.4th 201, 204-205.) However, equitable relief may be warranted if the attorney's conduct constituted " '*positive misconduct*,' " defined to mean a circumstance when the client was " 'unknowingly deprived of representation' " or "a total failure on the part of counsel to represent the client." (*Carroll, supra*, 32 Cal.3d at pp. 899, 900.) But even with positive misconduct, the plaintiff must show the reliance on the attorney was reasonable under the circumstances. (See *Freedman v. Pac. Gas & Elec. Co.* (1987) 196 Cal.App.3d 696, 708; *Aldrich v. San Fernando Valley Lumber Co.* (1985) 170 Cal.App.3d 725, 736; *Orange Empire Nat. Bank v. Kirk* (1968) 259 Cal.App.2d 347, 353 (*Orange Empire*); *Daley v. County of Butte* (1964) 227 Cal.App.2d 380, 391 (*Daley*); see also *Carroll, supra*, 32 Cal.3d at p. 898; *Weitz v. Yankosky* (1966) 63 Cal.2d 849, 855; *Stiles, supra*, 147 Cal.App.3d at p. 1148; *Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 507.) Although "[c]lients should not be forced to act as hawklike inquisitors of their own counsel" (*Daley, supra*, 227 Cal.App.2d at p. 392), they must remain "relatively free from negligence" to obtain equitable relief. (*Freedman, supra*, 196 Cal.App.3d at p. 708.)

After the expiration of section 473's six-month deadline, the public policy favoring finality predominates, and a court may grant equitable relief only in exceptional circumstances. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981-982; *Gibble v. Car-*

*Lene Research, Inc.* (1998) 67 Cal.App.4th 295, 314-315.) A moving party has the burden to show entitlement to equitable relief. (See *Moghaddam v. Bone* (2006) 142 Cal.App.4th 283, 291.)

### III. *Analysis of Claimed Extrinsic Fraud/Mistake*

For purposes of the summary judgment motion, we assume the truth of Dr. Sauer's assertions that he first learned of the February 2008 *judgment* in March 2011 when he was served with the collections papers. We further assume the evidence supports that Ferris engaged in positive misconduct in failing to oppose the motion. Despite these assumptions, Dr. Sauer was not entitled to equitable relief because the undisputed evidence establishes Dr. Sauer's claimed ignorance of the judgment for three years after entry of the judgment was not reasonable under the circumstances.

First, in response to Kerper's evidence, Dr. Sauer did not present any facts showing he was unaware of the summary judgment *motion*. He did not submit his own declaration or any other evidence to support this claim. Instead, he submitted only Ferris's deposition testimony stating he *does not recall* discussing the motion with Dr. Sauer, and Dr. Sauer's deposition testimony that he was unaware a *final judgment* had been entered. Although he said at his deposition he did not "believe" he was aware of the motion, this equivocal response cannot create a material triable issue of fact. (See *Ahrens v. Superior Court* (1988) 197 Cal.App.3d 1134, 1152; *Jane D. v. Ordinary Mutual* (1995) 32 Cal.App.4th 643, 654; *Guyselman v. Ramsey* (1960) 179 Cal.App.2d 802, 807.)

Second, Dr. Sauer admits he met with his attorney (Ferris) on a regular basis from 2003 through 2010. But he submitted no evidence showing he ever *asked* his attorney

14

about the status of his action and/or that Ferris misled him to believe the lawsuit was still active. Dr. Sauer testified he met with Ferris every month or every several months for three years after he filed the action against Kerper, and Dr. Sauer assumed "things were still perking along." That assumption is not reasonable. There is no evidence that Ferris would not have given him a truthful answer if Dr. Sauer had asked Ferris whether his lawsuit was still viable. A party who knows he or she has a pending lawsuit cannot simply close his or her eyes to the matter, and then several years later claim he or she was ignorant of the final judgment and on that basis seek to set aside the judgment.

We agree with Dr. Sauer that it is not necessary for a client to monitor his or her attorney's work, and an attorney has exclusive responsibility for the proceedings on behalf of the client. But a client may not ignore the fact that he or she has a lawsuit and assume—five years after the lawsuit is filed—that the case is still "perking along" without at least making a simple inquiry as to the status of the case. The situation would be different if there had been any *evidence* from which we could infer that Ferris misled Dr. Sauer or that there was a reasonable basis for Dr. Sauer to assume the case was still viable. However, Dr. Sauer presented no such evidence. For example, there was no evidence that Ferris discussed the case with Dr. Sauer as if the case was still moving forward or falsely identified a future hearing date or trial date, or that Dr. Sauer received any communications leading him to believe his claims were still viable. Even when viewing the facts in the light most favorable to Dr. Sauer, there is no *evidence* to support a reasonable inference that Dr. Sauer exercised even a minimal degree of attentiveness during the years after the judgment was entered or that his attorney falsely led him to

15

believe his case was still active after February 2008.  Absent such evidence, equitable relief is not an available remedy.

Dr. Sauer relies on a line of cases permitting equitable relief based on a showing of an attorney's positive misconduct.  (See, e.g., *Buckert v. Briggs* (1971) 15 Cal.App.3d 296 (*Buckert*); *Orange Empire, supra*, 259 Cal.App.2d 347.)  However, in each of these cases, there was evidence showing the client acted with at least minimal diligence and this evidence was a material factor in the court's analysis.

For example, in *Buckert*, after the defendant was granted a continuance, one of the plaintiffs told his attorney he wanted the case to "tried as soon as possible."  (*Buckert, supra*, 15 Cal.App.3d at pp. 299-300.)  When a new trial date was scheduled several months later, the plaintiffs' attorney did not inform the plaintiffs of this date; the attorney did not appear at the trial; and a judgment was entered in the defendant's favor.  (*Id.* at p. 300.)  Two days after the trial took place, the plaintiffs learned about the trial and judgment.  (*Ibid.*)  The plaintiffs took immediate steps to set it aside, including writing a letter to the trial judge.  (*Ibid.*)  After retaining a new attorney, the plaintiffs filed their motion to vacate within section 473's six-month time period for obtaining relief.  (*Id.* at p. 303.)  Under these circumstances, the trial court found the attorney's failure to advise the plaintiffs of the trial date constituted positive misconduct and the plaintiffs acted with reasonable diligence and "*without negligence on their part*."  (*Id.* at p. 302, italics added.)

Similarly, in *Orange Empire*, the party seeking equitable relief had numerous conversations with his attorney, and "[o]n each occasion [the attorney] informed [him] that he was taking care of the case for him."  (*Orange Empire, supra*, 259 Cal.App.2d at

16

p. 350.)  After a default was entered, the attorney again "assured [the party] that he was defending the cross-suit, and that no judgment would be entered against [the party]; [and] when [the party] inquired about the trial, [the attorney] replied that he would take care of the trial."  (*Ibid.*)  Despite these continuing assurances, the attorney never made an appearance in the action, and judgment was entered against the party.  (*Id.* at pp. 350-352.)  On this record, the reviewing court found the trial court abused its discretion in denying equitable relief.  (*Id.* at pp. 352-356.)

Unlike the parties in *Buckert* and *Orange Empire*, Dr. Sauer admits he took no action and asked no questions for several years regarding the status of his case.  He received no false assurances, and was never told that his case continued to be active.  Further, this case is unlike *Buckert* because the plaintiff there sought relief within the section 473 deadline.  As the California Supreme Court has made clear:  " '[W]hen relief under section 473 is available, there is a strong public policy in favor of granting relief and allowing the requesting party his or her day in court.  Beyond this period there is a strong public policy in favor of the finality of judgments and only in exceptional circumstances should relief be granted.' [Citations.]"  (*Rappleyea, supra*, 8 Cal.4th at pp. 981-982.)  The facts here do not reflect an exceptional circumstance.

Dr. Sauer contends he is entitled to equitable relief regardless of his diligence because Kerper did not submit specific evidence showing he was prejudiced by the delay.  However, the absence of prejudice does not alone entitle a party to reopen a judgment.  Prejudice is only one of many factors to consider in determining a party's entitlement to equitable relief.  (See *Weitz v. Yankosky, supra*, 63 Cal.2d at p. 857.)

17

In any event, as the trial court found, the record supports that Kerper would suffer prejudice from the lengthy delay. Dr. Sauer's causes of action and defenses pertain to events occurring in 2002 and 2003, including the issue whether Dr. Sauer fully disclosed facts to Kerper pertaining to his ownership of Parcel 28. Because these communications occurred more than eight years before Dr. Sauer sought equitable relief, Kerper would suffer obvious prejudice in terms of witnesses and documentation. Kerper obtained a final judgment in 2008, and there was no reason for him to predict the need to preserve witness memories and documents. A long delay inevitably results in " 'dimmed memories and lost witnesses.' " (*Lopez v. California* (1996) 49 Cal.App.4th 1292, 1295.) As in other contexts, prejudice may be inferred from the "delay itself." (*Wagner v. Rios* (1992) 4 Cal.App.4th 608, 612.)

We also find unavailing Dr. Sauer's contention his failure to exercise due diligence was excused by Kerper's conduct in seeking amendments to the judgments several years after the judgment was entered. We recognize the amendments issue is arguably different from the entry of the judgment itself. The record is unclear as to the reasons the judgment was not amended to add prevailing-party attorney fees until December 2010 despite that these attorney fees had been awarded several years earlier. But on the record before us there is no evidence supporting that any challenge to the attorney fees award would be meritorious. Dr. Sauer does not suggest any basis for concluding that the court erred in awarding Kerper prevailing party attorney fees based on the February 2008 judgment or that the amount awarded was unreasonable. Absent some evidence that Dr.

18

Sauer would prevail in challenging the attorney fees award, the court properly granted summary judgment on this issue.

## IV. *Dr. Sauer's Additional Contention*

Dr. Sauer additionally contends the court erred in granting the motion because Kerper did not comply with applicable procedural requirements. Dr. Sauer argues that Kerper failed to comply with California Rules of Court, rule 3.1350(d) which requires that the separate statement of undisputed facts contain "reference to the exhibit, title, page, and line numbers." On our review of the motion papers, we are satisfied that Kerper substantially complied with the rules. It is sufficiently clear from Kerper's motion papers the nature and location of the evidence supporting each factual assertion.

## DISPOSITION

Judgment affirmed. Appellant to bear respondent's costs on appeal.


HALLER, J.

WE CONCUR:


McCONNELL, P. J.


McINTYRE, J.


19